**Sift Oneybuchi IMO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–90–099–CR.**

Court of Appeals of Texas, Texarkana.

Aug. 13, 1991.

Rehearing Overruled Aug. 28, 1991.

James P. Finstrom, Jefferson, for appellant.

Tony Hileman, Jefferson, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Sift Oneybuchi Imo[1] appeals from his conviction for the offense of possession of cocaine. The jury assessed his punishment at ten years' confinement, probated.

Imo contends that his motion to suppress evidence obtained through an invalid search warrant was improperly denied by the trial court in violation of his rights under article 1, § 9 of the Texas Constitution and the fourth amendment of the United States Constitution.

The Court of Criminal Appeals has recently held in *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991), that the United States and Texas Constitutions may be interpreted differently. The court recognized that it had repeatedly held that article 1, § 9 of the Texas Constitution and the fourth amendment of the United States Constitution are the same in all material aspects.[2] *Gordon v. State*, 801 S.W.2d 899 (Tex.Crim.App.1990). However, the court went on to recognize that the State of Texas is free to reject federal holdings as to state constitutional issues so long as state action does not fall below the minimum standards provided by federal constitutional protection.

We shall separate our discussion of the application of the fourth amendment of the United States Constitution and the application of article 1, § 9 of the Texas Constitution. We shall begin our analysis with a discussion of the requirement of probable cause. We shall then discuss the application of the exclusionary rule under both constitutions.

1. Imo's first name is shown in the briefs as *G*ift. Because *S*ift Oneybuchi Imo is the name used in the indictment and judgment, he will be so identified in this opinion.

2. The fourth amendment to the United States Constitution reads as follows:
    The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
    Article 1, § 9 of the Texas Constitution reads as follows:
      The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

Imo specifically argues in the present case that the affidavit used to obtain the search warrant does not state the probable cause necessary to support the acquisition of a search warrant. The affidavit reads as follows:

5. AFFIANT has probable cause for said belief by reason of the following facts: That The Affiant has received information within the past 24 hours from a police officer who has purchased narcotics from the above described premises which said narcotics are believed to be Cocaine. That this officer has provided information to the Affiant on several occassions (sic) in the past concerning narcotics and the officer's information has always proven to be reliable and correct. Further that this officer has provided narcotics information to other police officers in the past and their information has always proven to be reliable and correct. Affiant does not wish to name this officer due to the fact that he is currently in an undercover capacity and to divulge his identity would be hazzardous (sic) to the safety of the officer at this time. Further that this officer has worked undercover for several years and is well aware of the different types of narcotics and that he is sure that the narcotics purchased from these premises are Cocaine.

This affidavit states that the officer who obtained the warrant had obtained information from an undercover police officer within the last twenty-four hours that he had purchased narcotics from an individual on the named premises.

■ The standard to be applied in assessing probable cause under the United States Constitution is the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The same standard has been held to apply in assessing probable cause under article 1, § 9 of the Texas Constitution. *Bower v. State*, 769 S.W.2d 887, 903 (Tex. Crim.App.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

■ The probable cause standard is not technical, it is practical, and deals with probabilities, not hard certainties. Affidavits for search warrants must be interpreted in a common sense and realistic manner. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Cantu*, 785 S.W.2d 181 (Tex.App.–Houston [14th Dist.] 1990, no pet.). Probable cause to support the issuance of a search warrant exists where the facts submitted are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued.

At trial, Imo objected to the admission of cocaine seized during the search because the affidavit did not indicate any time frame during which the offense allegedly occurred. The trial judge overruled his motion to suppress and his trial objection and admitted the evidence.

It is impossible to determine from the contents of the affidavit when some unnamed individual possessed the contraband at the residence. It clearly states that the police officer gave the information to the affiant within the twenty-four hours prior to his signing of the affidavit, but it does not state when the actual sale occurred. We have examined the remainder of the affidavit for any clue which would shed light upon this question without avail. Even though the magistrate's determination of probable cause should be given great deference by a reviewing court, the affidavit should have shown that the information was not stale.

■ The facts attested to must be so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time. *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). Because the affidavit in the present case does not show that the facts were closely related in time, it is defective under the probable cause requirements of the fourth amendment of the United States Constitution.

■ The Texas Court of Criminal Appeals has repeatedly held that an affidavit

which does not demonstrate when the unlawful incident took place is insufficient to support issuance of a search warrant. *Schmidt v. State,* 659 S.W.2d 420 (Tex. Crim.App.1983); *Heredia v. State,* 468 S.W.2d 833, 835 (Tex.Crim.App.1971). Often, the Texas courts do not mention or discuss whether they are speaking in terms of probable cause based on the United States Constitution, the Texas Constitution, or articles 1.06 and 18.01 of the Texas Code of Criminal Procedure. We have found no Texas case that distinguishes the meaning of probable cause in the Texas Constitution from its meaning in the Code of Criminal Procedure. We conclude that the affidavit was defective under the probable cause requirements of article 1, § 9 of the Texas Constitution.

Next, we must determine if the evidence should have been excluded because of the defective affidavit. The exclusionary rule was adopted by the federal government for enforcement of fourth amendment rights as a way to deter federal police officers from making illegal searches and seizures. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The fourth amendment of the United States Constitution was made applicable to the states through the due process clause of the fourteenth amendment by the United States Supreme Court decision in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

The United States Supreme Court created the good faith exception in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* the Court considered a situation in which a police officer executed a facially valid search warrant issued by a state court judge. A motion to suppress evidence seized under this warrant was granted by the trial court because it concluded that the affidavit was insufficient to establish probable cause. The question presented is whether the fourth amendment exclusionary rule "should be modified so as not to bar the use ... of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to

be unsupported by probable cause." *Leon,* 468 U.S. at 900, 104 S.Ct. at 3409, 82 L.Ed.2d at 684. The Court reasoned that exclusion of evidence due to judicial error would not effectively encourage the police to act in an ethical, legal fashion and would only penalize the police for a mistake of law made by the issuing magistrate.

The Supreme Court in *Leon* initially sets forth four justifications for suppression of evidence: (1) when the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or the affiant would have known was false except for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandons his judicial role and instead of serving in an neutral and detached manner becomes merely a rubber stamp for the police; (3) when the warrant is based on an affidavit which is so lacking in *indicia* of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant itself is facially deficient on such matters as failing to particularize the place to be searched or the things to be seized, so that the officers cannot reasonably presume it to be valid.

The only argument in the present case that could be made for exclusion would be on the basis of probable cause. The Supreme Court said in *Leon* that the exclusionary rule's purposes will only rarely be served in applying it in such circumstances. The question under *Leon* is whether the officer executing the warrant could have harbored an objectively reasonable belief in the existence of probable cause to search the house. Because the informer was a police officer, it is reasonable for another police officer to assume that the informing officer would have reported the illegal sale of narcotics as soon as possible after the occurrence, and inasmuch as the report was made within the last twenty-four hours, the information would not have been stale. The affidavit involved is not a "bare bones" type of statement. It provides specific information about the location of the place to be searched and the evidence expected to be found there. The affidavit

does not demonstrate a lack of objective good faith on the part of the officer.

■ We conclude that under the modification of the exclusionary rule by the United States Supreme Court in *Leon*, the exclusionary rule based upon the fourth amendment would not apply to the present case because it would not work as a deterrent to the police officers.

Texas, however, was excluding illegally obtained evidence in state courts long before the federal government excluded it under the fourth amendment in federal courts (1949) and long before the ruling that the fourth amendment applied to the states (1961). *See Odom v. State*, 121 Tex. Crim. 209, 50 S.W.2d 1103 (1932); *McLennan v. State*, 109 Tex.Crim. 83, 3 S.W.2d 447 (1928); *Sutton v. State*, 108 Tex.Crim. 351, 300 S.W. 639 (1927). This exclusion from evidence was done on the basis of article 727a, Texas Code of Criminal Procedure,[3] which specifically prohibited the admission in any criminal case evidence which had been obtained in violation of the constitutional laws of the State of Texas or of the United States of America. *Chapin v. State*, 107 Tex.Crim. 477, 296 S.W. 1095, 1099 (1927). Prior to the enactment of this statute, the Court of Criminal Appeals held that although a search was unauthorized under the Texas Constitution, there was no provision in the Texas Constitution or statutes that excluded the seized item from evidence. *Welchek v. State*, 93 Tex.Crim. 271, 247 S.W. 524 (1922). Thus, it would appear that the exclusionary rule in Texas came into being not pursuant to the Texas Constitution, but pursuant to the Texas Code of Criminal Procedure.

Article 1, § 9 of the Texas Constitution was never interpreted to provide for the exclusion of evidence except when it was applied in conjunction with the fourth amendment of the United States Constitution. For the purposes of exclusion under Texas law, the Texas courts have relied on article 38.23 of the Code of Criminal Procedure (formerly article 727a), which specifically provides that no evidence obtained by an officer or other person in violation of the provisions of the Constitution or laws of the State of Texas or the Constitution or laws of the United States shall be admitted into evidence against the accused on the trial of any criminal case.

If article 1, § 9 of the Texas Constitution is to be interpreted to have the same application as the fourth amendment to the United States Constitution, then under the good faith policy of the *Leon* case, the evidence obtained by the search and seizure would not be excluded. If we look at the historic interpretation of this section of the Texas Constitution, we would not find a basis for applying the exclusionary rule.

Under the present Texas Code of Criminal Procedure, article 38.23, which became effective September 1, 1987, the exclusionary rule does not apply when the evidence was obtained by a law enforcement officer "acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause."

■ We do not reach an interpretation and application of article 38.23 because Imo has not raised the issue of exclusion under the Texas Code of Criminal Procedure on appeal.[4] We do not consider whether the exclusionary rule set forth in the Texas Code of Criminal Procedure would call for a different result or whether the good faith rule set forth in that same article would call for a different conclusion than the good faith rule set forth by the United States Supreme Court in *Leon*.

In summary, the affidavit did not fulfill the specific requirements of probable cause, but pursuant to the decision in *Leon*, the evidence would not be excluded under the fourth amendment of the Constitution of the United States. Article 1, § 9 of the Texas Constitution was never construed to

---

**3.** Presently TEX.CODE CRIM.PROC.ANN. § 38.23 (Vernon Supp.1991).

**4.** Although in the trial court Imo objected to the admission of this evidence on the basis of the Code of Criminal Procedure, he has not mentioned this provision on appeal and has limited his point of error on appeal concerning this evidence to the United States Constitution and the Texas Constitution.

exclude evidence until the United States Supreme Court began excluding state evidence on the basis of the fourth amendment. That basis was a deterrent to keep the police from violating fourth amendment rights. Under that rationale, article 1, § 9 of the Texas Constitution would not be construed to exclude the evidence in the present case because the error was that of the magistrate and not the police officer. Texas has long excluded evidence under the Code of Criminal Procedure, which also now has a "good faith" provision, but the Code of Criminal Procedure was not raised in the present case. This point of error is overruled.

■■■ Imo next contends that the trial court erred by denying his motion for mistrial because the testimony of a police officer related to extraneous offenses. Officer Weaver, when asked what had initially directed his attention to the house which was eventually searched, responded, "We had bought some narcotics out of that residence." Counsel promptly objected to this testimony on the basis that the answer was nonresponsive and prejudicial. The trial court sustained the objection and instructed the jury to disregard his answer, but denied the motion for mistrial. An instruction to the jury about the impropriety of specific testimony is considered sufficient to erase the effect of that testimony except in extreme cases where the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *Waldo v. State*, 746 S.W.2d 750 (Tex.Crim. App.1988). The instruction was clearly sufficient to correct any impropriety. This point of error is overruled.

■■■ Imo next contends that the trial court erred by denying the motion for mistrial directed to the following statement, which was made by the State during jury argument on guilt/innocence:

> You have heard enough evidence in this case. The Defendant is dealing in dope out of this house out here on the W.P.A. road. It is that simple. Use your common sense.

The court sustained counsel's objection to this argument and instructed the jury not to consider the statement, but refused to order a mistrial. It has been held improper for the prosecution to argue that a defendant was a drug dealer in a trial for possession only. *Williams v. State*, 777 S.W.2d 732 (Tex.App.–Beaumont 1989, no pet.). The evidence presented in this case involved only possession of a small quantity of cocaine. The prosecutor recognized the error and after the objection, immediately stated, "He had possession of dope out there at this place." We have previously discussed the standard to be applied when examining an objection and jury instruction. This statement is not so inflammatory as to suggest the impossibility of withdrawing the impression produced. *Waldo v. State*, 746 S.W.2d 750. This point of error is overruled.

Imo next contends that the trial court committed reversible error by charging the jury on the law of parties over the objection that there was no evidence to support this instruction. The original charge presented by the court to counsel did not contain a charge on the law of parties. Defendant's counsel objected, requesting that a part of that law be presented to the jury, specifically, "Mere presence alone will not constitute one a party to a crime." The trial judge refused to insert that portion of the law of parties and instead inserted the complete law of parties. Defendant then objected to the charge because it contained the entire law of parties rather than the portion which he had requested.

■■■ The rule is that the jury charge should instruct the jury on the law applicable to every theory within the scope of the indictment which the evidence tends to establish, whether favorable to the State or the defendant. *Christian v. State*, 71 Tex. Crim. 566, 161 S.W. 101 (1913); TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1991). It is generally held to be error for a trial judge to fail to explicitly apply the law of parties to the facts of the particular case. *Johnson v. State*, 739 S.W.2d 299 (Tex.Crim.App.1987). Imo did not request the charge on parties which was ulti-

mately given to the jury and did timely object to that portion of the charge. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1984), requires that we reverse convictions for charging error only if actual harm to a defendant occurred. As an objection was made in the present case, only some harm must have occurred. The absence or presence of actual harm is determined through an examination of the entire record. However, we need to reverse due to an improper charge on the law of parties only if the law of parties was actually necessary for the jury to decide the case. If the evidence was sufficient to support a conviction of a defendant as a principal, a jury would rationally convict the defendant as a principal rather than as a party. *Black v. State*, 723 S.W.2d 674, 675–76 (Tex.Crim.App.1986).

■ In the present case, there is no evidence to support a giving on the law of parties. The State did not try the case upon this theory and responded to the judge's query about the propriety of this portion of the charge by suggesting that it should not be sent to the jury. Nevertheless, because there was a complete absence of evidence to support a finding that another party was involved in the alleged possession, that portion of the charge was not necessary in order for the jury to decide the case. We have determined beyond a reasonable doubt that the error in the charge made no contribution to his conviction or to the punishment assessed. *Black v. State*, 723 S.W.2d 674; TEX.R.APP.P. 81(b)(2). This point of error is overruled.

The judgment of the trial court is affirmed.