NO. 07-00-0544-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 11, 2001

_____

FENNELL M. DAVIS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 99-429,515; HON. WELDON KIRK, PRESIDING

_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Fennell M. Davis (appellant) appeals his conviction for possessing a controlled substance. Of the six issues raised, we only address the fifth and sixth for they are dispositive. And, through those particular issues, appellant contends that the trial court erred by admitting evidence obtained via an illegal search. We reverse and remand the judgment.

***Background***

Appellant was charged with possessing a controlled substance, namely cocaine. A motion to suppress the evidence of that cocaine was filed. At the hearing on the motion, the State called the officer who conducted the search of appellant who was Officer Blakney (Blakney). Via questioning, the officer stated that

> "[he] and Officer Jordan, which [sic] worked this area in the 1500 Block of 21st, were patrolling around. And this house is in a high drug area-type situation. We went to that location. There was several people around the sidewalk in front of the house, I believe, 1504 21st. We pulled up and stopped to check the people that were on the sidewalks, since this is a known drug area for us."

Blakney further testified that 1) it was around midnight when they noticed the group of people, 2) the two officers stopped at the scene and approached the group, 3) "[a]t this time, as we were walking up, [appellant] became very nervous acting . . . would walk from the group of people towards the house . . . turn around and walk back towards the group . . . very nervous and jittery acting," 4) he had dealt with appellant during "some domestic calls" and when appellant "climb[ed] in the window to the next door before that house burned," 5) because of appellant's actions the officer confronted him and asked for identification and appellant provided his wallet, 6) "due to his [appellant's] actions, being nervous, I [the officer] felt for my safety, [and] . . . went ahead and did a protective patdown on him for weapons," and 7) a crack pipe was discovered in appellant's pants' pocket. The discovery of the pipe allegedly provided the officer probable cause to arrest appellant, which the officer did. And, while conducting a search incident to the arrest, cocaine also was discovered on appellant. The contraband discovered on appellant's person was later used as basis for the prosecution he underwent and to support his conviction.

### *Standard of Review*

Whether the trial court erred in denying a motion to suppress depends upon whether it abused its discretion. *Benitez v. State*, 5 S.W.3d 915, 918 (Tex. App. --Amarillo 1999, pet. ref'd). Whether it abused its discretion depends upon whether, given the record before it and the applicable law, the decision fell outside the zone of reasonable disagreement. *Id.*

Next, while questions of law are subject to unfettered *de novo* review, the same is not necessarily true with regard to mixed questions of law and fact. That is, the application of law to fact is a mixed question of law and fact. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Furthermore, when the resolution of the ultimate question turns on an evaluation of the credibility and demeanor of the witnesses, then we afford almost total deference to the manner in which the trial court applied the law to the facts before it. The same deference is afforded the trial court's determination of the historical facts involved. *Id.* In all other situations, we review, *de novo*, the manner in which the law is applied. *Id.*

Next, it is beyond gainsay that the United States and Texas Constitutions prohibit unreasonable searches. U.S. Const. amend. IV; Tex. Const. Ann. art. I, §9 (Vernon 1997). Furthermore, a warrantless search is *per se* unreasonable. *Reyes v. State*, 910 S.W.2d 585, 589 (Tex. App.-- Amarillo 1995, pet. ref'd). However, exceptions have been allowed by case law dispensing with the need for a warrant. For instance, an investigative detention is justified under both the state and federal constitutions if the officer, based on specific and articulable facts, reasonably surmises that the detained person may be

3

associated with a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Davis v. State*, 829 S.W.2d 218, 219 (Tex. Crim. App.1992); *Graham v. State,* 893 S.W.2d 4, 7 (Tex. App. – Dallas 1994, no pet.) (holding that once a traffic violation was observed, the officers acted reasonably when they stopped the vehicle in which appellant was a passenger.)

A pat-down search during a detention is permissible when the police officer reasonably suspects he is dealing with an armed and dangerous individual. *Maldonado v. State*, 853 S.W.2d 746, 748 (Tex. App.--Houston [1st Dist.] 1993, no pet.) (citing *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883). The officer does not have to be absolutely certain that the individual is armed, nor does he have to have probable cause to arrest. *Id.* Rather, the issue is whether a reasonably prudent person in the same circumstances would be warranted in the belief that his or her safety or that of others is in danger. *Id.* The record must contain "specific and articulable facts" that, when taken together with rational inferences from those facts, would warrant a self-protective search for weapons. *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991).

### *Analysis*

In appellant's issues five and six, he claims that the evidence was seized in violation of 1) the Fourth Amendment to the United States Constitution and 2) article 1, § 9 of the Texas Constitution. We agree.

The facts upon which the officer based his supposed need to search consisted of seeing four to five people gathered at midnight in someone's yard in a neighborhood known for drug activity while also witnessing the appellant, who appeared nervous, walk

4

to and from the group several times. Absent is any evidence that anyone including appellant made any furtive gestures at the time or that appellant attempted to flee.[1] Absent is testimony from the officers suggesting that they saw anyone in the group commit a criminal act.[2] Absent is testimony that the officers were directed to the area in response to any reported criminal activity; indeed, neither officer testified that they had ever arrested anyone in the area for purportedly dealing in drugs.

Also absent is any testimony by either officer illustrating that they had reason to suspect that appellant dealt with controlled substances or had a propensity for violence. To the extent either had come in contact with him before, that contact involved "some domestic calls" and appellant "climbing in the window to the next door before that house burned" (whatever the latter means). Whether any of those instances involved drug activity or violent behavior appears nowhere in the record. And, because such evidence appears nowhere, one is not free to infer that they did entail such activity or behavior.

---

[1]We recognize that the State attempted to characterize appellant's walking to and from the group as evasive behavior or attempted flight. Yet, how can that rationally be considered evasive conduct or flight when appellant never left the scene, returned to the group after walking away, and approached the officer when directed to do so. Simply put, it cannot. Indeed, had appellant attempted to walk away, that act would not have been enough to create reasonable suspicion. *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). One has a right to leave when approached by officers unless the officer has reasonable suspicion of criminal activity before approaching. *Id.* Leaving cannot supply the missing articulable facts justifying suspicion. *Id.*

[2]To the extent appellant stated he wanted the others to leave the yard because they were "doing things that they was doing," no one asked what those things that "they was doing" were. And, without any indication about the tenor of those acts, one cannot reasonably infer that they were suggestive of criminal conduct. That would be tantamount to creating non-existent facts. Moreover, nothing of record indicates that the officers perceived or could have perceived what, if anything, the group was supposedly doing. The officers never said they saw the group doing anything other than standing in the yard. And, if the supposed acts could not be perceived by a reasonable person in the position of the officers, they could hardly form the basis for reasonable suspicion.

5

It is beyond dispute that being in a high crime area does not alone create reasonable suspicion justifying a search. *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). Nor does one's acting nervous alone permit an officer to reasonably suspect that his safety may be in jeopardy; rather, there must be other circumstances which suggests the presence of a weapon. *Horton v. State*, 16 S.W.3d 848, 853 (Tex. App.–Austin 2000, no pet.). Similarly, nervousness alone does not constitute grounds to reasonably suspect criminal activity is afoot. *Munera v. State*, 965 S.W.2d 523, 531 (Tex. App.–Houston [14th Dist.] 1997, pet. ref'd.). Rather, the totality of the circumstances control, and the totality at bar consists of nothing more than a gathering of several individuals at midnight in a yard in an area known for drug use and wherein one of the individuals walks to and fro and appears nervous. Those circumstances are nothing more that the indicia appearing in *Gamble v. State,* 8 S.W.3d 452 (Tex. App. – Houston [1st Dist.] 1999, no pet.).[3] And, since they did not give rise to reasonable suspicion there, they do not here. The search was illegal.

Next, the fruits of the illegal search were admitted into evidence at trial and constituted the basis of appellant's conviction. In other words, had the trial court suppressed the evidence as it should have, there would have been no basis upon which the State could have prosecuted appellant. Consequently, we cannot but hold that the trial court's error was harmful under Texas Rule of Appellate Procedure 44.2(a).

---

[3]According to the *Gamble* court, "the sole bases for the detention were (1) the area had a history of drug sales; (2) the police had had frequent calls to the area or the residence over the last year; (3) it was 3:00 a.m.; (4) [defendant] was either standing in the street near, or walking in the street toward, a residence to which the officers had been called in [the] past, but at which they had never made arrests for drugs or weapons; and (5) appellant watched the marked police car and walked away from it when it turned around." *Gamble v. State*, 8 S.W.3d 452, 453-54 (Tex. App.–Houston [1st Dist.] 1999, no pet.).

Given their economic status, some families cannot afford to live in places other than high crime neighborhoods. To hold that their gathering outside at night, walking to and fro, and becoming nervous when police approach justifies a search of their person is to further injure them for circumstances beyond their control. We will not facilitate that by upholding the search at bar. Accordingly, the judgment is reversed and the cause remanded to the trial court for further proceedings.

Brian Quinn
Justice

Publish.