NO. 07-02-0348-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 25, 2004
_____

PATRICK EUGENE NASH,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. B14446-0205; HON. JACK R. MILLER, PRESIDING
_____

*Modified Opinion Per T.R.A.P. Rule 50*
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

On February 12, 2004, this court rendered its opinion and judgment in this cause. The subsequent motion for rehearing filed by Patrick Eugene Nash (appellant) was overruled on March 26, 2004, without any modification of either the original opinion or judgment. Approximately two months later (*i.e.* on May 26, 2004), we received a copy of appellant's petition for discretionary review (PDR). The latter was apparently filed with the Texas Court of Criminal Appeals on June 2, 2004, given the file-mark appearing on it.

Assuming that the PDR is timely, *see* TEX. R. APP. P. 68.2(a) (directing that the petition be filed within 30 days after either the day the court of appeals judgment was rendered or the day the last timely motion for rehearing was overruled), we file this modified opinion and withdraw our prior opinion and judgment in accordance with Texas Rule of Appellate Procedure 50. TEX. R. APP. P. 50 (stating that the court of appeals may summarily reconsider and correct or modify its opinion or judgment within 30 days of the date a petition for discretionary review is filed).

Appellant appeals his conviction for possession of a controlled substance in an amount of one gram or more but less than four grams. Four issues allegedly justifying reversal are asserted. Each involves whether the trial court abused its discretion in denying appellant's motion to suppress. One involves whether there was no "probable cause to search" him, two involve whether there was insufficient evidence to justify an arrest, and another involves whether the search was not "a permissible stop and frisk." The last issue need only be addressed for it is dispositive of the others. We reform the judgment of the trial court and, as reformed, affirm it.

### *Background*

At 10:39 p.m., on April 15, 2002, the local police dispatcher, Larry Rocha, received an anonymous call. The person told Rocha that an individual inside a black Ford Explorer in front of 105 East Brazier Street was "'disturbing [the] peace.'" Rocha asked what he meant, and the caller responded by saying that "he was playing his music too loud . . . ." The caller also gave Rocha the vehicle's license number and, before disconnecting the line, said, "oh yeah, he keeps his dope in his right sock." At that point, Rocha dispatched several officers to the scene to investigate.

2

One of the first policemen to respond was Officer Ward. Ward found an Explorer with the license number described by the anonymous caller at the Brazier Street address. So too did he hear music coming from the vehicle. Upon arriving at the scene, Ward exited his patrol car and approached. Several individuals around the Explorer began "backing off." Ward "instructed them to come back in the street and speak with" him. At that point, Ward turned and saw another person (identified as Derek Head) "throw a small bag containing a white rock substance." Though Ward described Head as being within "close proximity" to the vehicle, another officer said that Ward removed or talked Head into exiting the Explorer. Nevertheless, Head was arrested, and the substance in the bag was determined to be cocaine.

A second officer, John Poole-Williams, had also responded to the police dispatch. Knowing the area to be one involving high drug traffic, he arrived at the scene momentarily after Ward, and saw the Explorer. The front door of the vehicle was open, and appellant sat inside on the front seat. Though the officer was not previously informed of the identity of the person about whom the complaint was made, Poole-Williams recognized appellant. The latter "was a known drug dealer."

After seeing Ward retrieve "some dope" from Head, Poole-Williams approached appellant and asked him to step out of the vehicle to undergo a pat-down for weapons. The officer believed that appellant "might be involved in narcotics activity" and knew that weapons may be used by those engaged in that activity. During the pat-down, the officer felt what he recognized to be money in appellant's pocket. He removed the money to determine whether any type of weapon was hidden behind it. None was found, and the frisk continued. As the officer came to appellant's sock, another item was discovered

3

wrapped in plastic. From experience, Poole-Williams knew that "contraband" and "weapons" were often wrapped in plastic as a means of concealing their identity. The officer asked appellant what it was, to which question appellant responded that it was "nothing." Then, the officer reached down and removed it. As the officer did so, appellant ran away. The item found in the sock consisted of a "rock-like substance."

Appellant was later arrested and indicted for the offense of possession of a controlled substance in an amount of four grams or more but less than 200 grams. After the court overruled his motion to suppress, he pled guilty, via a plea bargain agreement, to the lesser offense of possession of a controlled substance in an amount of one gram or more but less than four grams. The trial court found him guilty of the latter offense. Thereafter, he was granted permission to appeal.

### Issue Four - Pat-Down Search

Through his fourth issue, appellant contends that the search cannot be justified as a legitimate stop and frisk. This is so because Poole-Williams detained appellant based upon nothing more than "the call from an unknown location by an unknown caller." He personally witnessed no criminal activity nor had basis to conclude that appellant was armed or dangerous. We overrule the issue.

*Standard of Review*

The standard of review is one of abused discretion, as described in *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), *Benitez v. State,* 5 S.W.3d 915, 921 (Tex. App.–Amarillo 1999, pet. ref'd), and *LaSalle v. State,* 923 S.W.2d 819, 823 (Tex. App.–Amarillo 1996, pet. ref'd). Furthermore, when no findings of fact are executed as

4

here, we must view the evidence in a light favorable to the ruling. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Next, one may be temporarily detained when an officer has specific and articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect the detainee has engaged or is (or soon will be) engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The standard is objective. *Id.* Thus, the subjective intent of the officer is irrelevant. *Id.* Additionally, we address the question by considering the totality of the circumstances. *Id.*

Next, once a person is detained, then a pat-down search during a detention is permissible when the police officer reasonably suspects he is dealing with an armed and dangerous individual. *Davis v. State*, 61 S.W.3d 94, 97 (Tex. App.–Amarillo 2001, no pet.); *Maldonado v. State,* 853 S.W.2d 746, 748 (Tex. App.–Houston [1st Dist.] 1993, no pet.) (citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This does not mean that the officer must be absolutely certain that the individual is armed; nor does the officer have to have probable cause to arrest. *Davis v. State*, 61 S.W.3d at 97. Rather, the issue is whether a reasonably prudent person in the same circumstances would be warranted in believing that his safety or that of others is in danger. *Id.; Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000) (stating that the officer must have before him specific and articulable facts reasonably leading him to conclude that the suspect might possess a weapon).

*Application of the Standard*

Though an anonymous tip rarely establishes the requisite suspicion necessary to justify an initial detention, it usually will justify the initiation of an investigation. *Garcia v.*

*State*, 3 S.W.3d 227, 234 (Tex. App.–Houston [14th Dist.] 1999), *aff'd on other grounds*, 43 S.W.3d 527 (Tex. Crim. App. 2001). Here, the anonymous tipster informed the police that someone was "disturbing the peace" by playing loud music outdoors at 10:39 at night, at a specific street address, and from a specific vehicle. So too were the officers told of possible drug involvement.

That the caller also informed the officers of the rather unique location of the drugs possessed by appellant tends to indicate that he had some personal knowledge of the contraband. This, coupled with the iteration of a specific type vehicle, a specific license number of the vehicle and a specific location of the vehicle, constitute some indicia of the reliability of the tip. *See Garcia v. State*, 3 S.W.3d at 237-38 (discussing the various indicia of reliability to look for). In any case, the circumstances entitled the police to begin an investigation.

When the first officer arrived, he confirmed the presence of the specific Explorer mentioned in the police dispatch and its broadcast of music late at night at the location given by the tipster. This provided some confirmation of the complaint about the purported disturbance and again justified further investigation. As the officer did so, various of the individuals present at the scene began to scatter. So too did another, who was in or around the Explorer, attempt to rid himself of an object. These furtive gestures undertaken in response to an officer approaching could reasonably be said to evince a consciousness of guilt. They also provided additional basis to continue the investigation, and temporarily detain those in and around the Explorer to confirm or to negate whether crime was afoot.

Next, among the individuals found at the scene was appellant. The officers knew him to be a drug dealer. Moreover, the area in which he was found was known for its high

6

incidence of drug activity. And, there he sat in the front seat of the Explorer from which emanated the music and from which another occupant had tried to discard an object as the police approached.

The nature of the complaint by the anonymous caller, the time of night, the location of the disturbance, and appellant, his reputation, and his presence with others who attempted to flee or rid themselves of objects with which they did not want to be discovered tended to corroborate the anonymous tip and could lead an officer to reasonably conclude that crime was afoot and appellant was involved in it. Thus, the officers were entitled to temporarily detain him. And, that the crime involved not only disturbing the peace but also narcotics justified the frisk undertaken of appellant for weapons. As our Court of Criminal Appeals has said, the nature of the suspected criminal activity may provide basis for officers to reasonably conclude that a detainee is armed and dangerous. *Carmouche v. State*, 10 S.W.3d at 330. Moreover, it is rather settled that weapons and violence are frequently associated with drugs, thus justifying a frisk for weapons. *Id.* And, that the officer may have thought to search for both weapons and narcotics while frisking the detainee matters not, so long as he had legitimate basis to frisk for weapons. Again, the subjective intent of the officer is irrelevant. *Garcia v. State*, 43 S.W.3d at 530.

Given the totality of the circumstances appearing of record, the trial court had ample evidence upon which to conclude that Poole-Williams had reasonable suspicion to detain and frisk appellant. Furthermore, if upon conducting a lawful frisk the officer touches an item whose identity is immediately apparent, the officer may legitimately seize it. *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993)*; Carmouche v. State*, 10 S.W.3d at 330. Here, the contraband found in appellant's sock

7

was wrapped in a plastic bag. The officer frisking appellant testified that, from his experience, contraband such as drugs and weapons were often wrapped in plastic to conceal their identity and that he immediately recognized the incriminating nature of the bag. By this time, and before the object was removed, the officer 1) had been informed by dispatch of possible drug activity being involved, 2) had seen another person at the scene attempt to discard contraband, 3) had afforded appellant opportunity to explain what the object in his sock was, and 4) had heard appellant deny that the object was anything at all. Thus, he was not obligated to ignore the drugs hidden in appellant's sock. *In re L.R.,* 975 S.W.2d 656, 659 (Tex. App.–San Antonio 1998, no pet.) (holding that the officer immediately recognized the incriminating nature of the cellophane baggie from his training and experience which had taught him that illicit substances are commonly wrapped in cellophane). In short, discovery of the contraband in appellant's sock was the result of a lawful frisk for weapons, and we cannot say that the trial court abused its discretion in refusing to suppress the evidence.

Finally, since the officer had reasonable suspicion to do that which he did, it does not matter whether he also had probable cause to search. In other words, probable cause was not needed, given the existence of reasonable suspicion. And, this obviates the need to address appellant's first three issues.

As an aside, we note that the reporter's record from the hearing on appellant's guilty plea revealed that the trial court found appellant guilty of the lesser offense of possession of a controlled substance in an amount of one gram or more but less than four grams. That offense is a third degree felony. However, the judgment contained in the clerk's record shows that appellant was convicted of the offense for which he was originally indicted, that

8

being possession of a controlled substance in an amount of four grams or more but less than 200 grams. The latter is a felony of the second degree. Thus, the judgment inaccurately reflects the offense for which appellant was convicted via the plea bargain. We have the power to correct that by reforming the judgment. *Nolan v. State,* 39 S.W.3d 697, 698 (Tex. App.–Houston [1st Dist.] 2001, no pet.). We do so now. The judgment of the trial court is reformed to show that appellant was convicted of the offense of possession of a controlled substance in an amount of one gram or more but less than four grams, a third degree felony. As reformed, the judgment is affirmed.

Brian Quinn
Justice

Do not publish.

9