NO. 07-08-0284-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 17, 2008
_____

TYRONE GREEN,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY;

NO. 1060075D; HON. LOUIS E. STURNS, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Tyrone Green was convicted, after a guilty plea, of possessing a controlled substance with intent to deliver. His sole issue involves the trial court's alleged abuse of discretion in overruling his motion to suppress. We affirm the judgment.

*Background*

On March 18, 2007, around 1:00 a.m., Officer Sparks was patrolling the Butler housing project in Fort Worth. The area was considered one of high crime given the no

trespassing signs hung on several of the buildings, numerous calls about loitering, its notoriety for drug trafficking, and its history of nighttime vandalism and theft.

As he patrolled, the officer observed three persons standing together. The group consisted of two men and a woman. Upon seeing them, Sparks parked his marked patrol car, exited it, and began walking toward the group. The group, in turn, began walking towards him. They met several yards from the patrol car, and when they did, the officer asked whether they lived in the area. The woman and one man said yes. The other person, *i.e.* appellant, said no but that he was visiting the woman. The officer then asked the woman if that was true, and she denied it.

Appellant's response coupled with the woman's denial led the officer to believe that appellant "was not supposed to be there." So, Sparks undertook to investigate whether appellant was trespassing and asked appellant for his name. Before responding, however, appellant put his hands in the pockets of his sweatshirt. That made the officer nervous given the time of night, the location of the encounter, and the absence of any other officers. Consequently, he asked appellant to remove his hands from the pockets. Appellant initially complied, removed his hands, and disclosed his name.

As the officer prepared to return to his vehicle and determine if appellant was the subject of any outstanding warrants, appellant again placed his hands into his sweatshirt pockets. And, the gesture once again caused the officer concern for the reasons previously mentioned. Thus, he again asked appellant to remove them from where they were. The request went unheeded. Instead, appellant grew "upset" and said, "I don't have anything." Hearing this, the officer walked behind appellant, grabbed his right hand, and pulled it from the pocket. When he did this, he noticed a plastic bag in appellant's hand.

2

The bag contained a substance that appeared to be cocaine. Seeing it, the officer arrested appellant, conducted a search incident to the arrest, and discovered 15 other packets of the drug.

In reviewing a ruling on a motion to suppress, we afford great deference to the trial court's interpretation of historical facts. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). That deference includes both the trial court's authority to assess the credibility of the witnesses and the authority to disbelieve or believe controverted testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, we do not afford the same deference to the trial court's application or interpretation of the law. *Ford v. State,* 158 S.W.3d at 493.

As previously mentioned, appellant argues that the trial court erred in denying his motion to suppress because the officer had no probable cause to detain him. That Sparks may or may not have had probable cause is unimportant here. This is so because an officer is free to walk up to people and ask them questions without any justification, so long as the individuals are at liberty to leave or refuse to answer. *Harper v. State,* 217 S.W.3d 672, 674 (Tex. App.–Amarillo 2007, no pet.)*; see also State v. Perez,* 85 S.W.3d 817, 819 (Tex. Crim. App. 2002) (stating that police officers do not violate the Fourth Amendment by approaching individuals in public places, asking them to voluntarily answer questions, and posing questions to them if the persons are willing to answer). So too may an officer detain an individual if the totality of the circumstances present would lead him to reasonably suspect that the detainee has engaged in or soon would be engaged in criminal activity. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). And, once

3

legitimately detained, the person is subject to being frisked if the officer reasonably believes that his safety or the safety of others is endangered. *Davis v. State,* 61 S.W.3d 94, 97 (Tex. App.–Amarillo 2001, no pet.). And, those are the circumstances here.

Nothing before us suggests that Sparks directed the group of three to stop or approach him when he first saw them. Rather, the record indicates that they walked towards him of their own volition. Nor does the record suggest that he forced the three to answer any of his initial questions or prohibited them from leaving until they answered. So, one could reasonably conclude that the initial exchange between the group and officer was nothing more than a consensual encounter.

During the encounter, appellant opted to lie about the reasons for his being at the housing project at that hour. The prevarication coupled with the time of night, the nature of the area and the criminal conduct historically associated with it, and the presence of no trespassing signs hanging from various buildings were sufficient basis to enable a reasonable officer to temporarily detain appellant and determine whether he was criminally trespassing. To those circumstances, we add the evidence that no other police officers were present, Sparks was outnumbered, appellant's effort to conceal his hands in his sweatshirt pockets, appellant's nervousness and defiance, the truism that weapons can be hidden in pockets, and the officer's training about reducing risk by assuring that a detainee's hands are visible. When all are combined, the sum of the indicia was enough to allow a policeman to conclude that his safety was at risk. So, Sparks was entitled to frisk appellant. And, while he simply removed appellant's hand from the pocket rather than conduct a frisk, we cannot say that the former was materially different than a frisk under

4

the circumstances. In other words, the intrusion upon appellant's person was minimal and limited to the area which posed the potential threat.

Simply put, the officer had reasonable suspicion to undertake the temporary detention and search of appellant. Furthermore, the drugs were discovered incident to that legitimate conduct. Thus, the trial court did not err in denying the motion to suppress.

The judgment of the trial court is affirmed.


Per Curiam

Do not publish.