NO. 07-08-0224-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 31, 2009

_____

SHELDON KEITH CRAIN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,073-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Sheldon Keith Crain, was charged by indictment with the offense of unlawful possession of a firearm by a felon, enhanced.[1]  Pursuant to a plea bargain, Appellant entered a plea of guilty and was assessed a sentence of six years confinement

---

[1]*See* Tex. Penal Code Ann. § 46.04(a)(2) (Vernon Supp. 2008).  The indictment also alleged that Appellant was previously convicted of a felony (other than the felony relied upon by the State to prove the primary offense), making the offense punishable as a second degree felony.  *See* § 12.42(a ).

and a fine of $1,000. The trial court certified Appellant's right to appeal matters raised by written motion filed and ruled on before trial. *See* Tex. R. App. P. 25.2(a)(2)(A). Appellant now raises a single issue: whether the trial court erred by denying his motion to suppress evidence obtained after he was illegally detained. We affirm.

## Background

On Appellant's motion, the trial court held a suppression hearing and the following evidence was adduced. On July 23, 2006, Officer Dewayne Griffin, Amarillo Police Department, was responding to a theft call when he spotted Appellant walking in the roadway of a residential area at 12:30 a.m. When Appellant saw Officer Griffin's patrol car, he grabbed at his waistband. Officer Griffin noted Appellant's presence and decided to return to speak with him after responding to the theft call due to the number of burglaries committed after midnight in the area where Appellant was spotted.

After responding to the call, Officer Griffin returned. Officer Cody Moore, who also responded to the theft call as back-up, agreed to assist. Officer Griffin located Appellant walking across a yard. He turned his spotlight on Appellant and asked him to come over to his patrol car and talk to him. Appellant continued walking several steps–then turned towards him. Officer Griffin exited his car and walked over to Appellant. Appellant appeared nervous and asked Officer Griffin if he was doing anything wrong. Officer Griffin responded he just wanted to speak with him. As they were talking, Officer Griffin noticed a strong odor of marihuana emanating from Appellant's person and breath.

2

After smelling the marihuana, Officer Griffin decided to detain Appellant for further investigation. He asked Appellant to put his hands behind his back and accompany him to his patrol car. As he approached the patrol car, Officer Moore arrived. Officer Griffin placed Appellant against the patrol car while he patted down Appellant's right side. When Officer Moore patted down Appellant's left side, he noticed a bulge beneath his shirt and, after pushing against the bulge, determined Appellant was carrying a handgun. He pulled up Appellant's shirt and disarmed him. Officer Griffin placed Appellant under arrest.

JoAnn Marez testified she lived at the address where Officer Griffin first turned his spotlight on Appellant. She further testified Appellant was an acquaintance whom she expected to visit her that night. When Officer Griffin first called out to Appellant from his patrol car, she testified Appellant was four or five feet from her unlocked door. She also testified Officer Griffin ordered or commanded Appellant to "stop" and "not to run." In rebuttal, Officer Griffin denied giving these commands. He testified that, until he smelled the marihuana, Appellant was free to leave. At the hearing's conclusion, the trial court denied Appellant's motion finding Officer Griffin's testimony was "very credible."

### *Standard of Review*

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion, *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial court's fact findings are based on an evaluation of witness credibility or demeanor, almost total deference is given to its factual determinations supported by the record. *St. George v. State*, 237 S.W.3d 720, 725

3

(Tex.Crim.App. 2007). On questions of mixed law and fact that do not turn on the trial court's evaluation of witness credibility and demeanor, however, we conduct *a de novo* review. *Amador*, 221 S.W.3d at 673.

When, as here, no findings of fact were requested nor filed, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000). If the trial court's decision is correct on any theory of law applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003), *cert. denied,* 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004).

### *Encounter vs. Detention*

Appellant contends that he was unlawfully detained when Officer Griffin shined his spotlight on him and commanded him to "stop" or "not to run." The State contends that Officer Griffin's initial contact with Appellant was an encounter that evolved into a temporary investigative detention after Officer Griffin detected an odor of marihuana emanating from Appellant.

There are three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002). Encounters occur when police officers approach an individual in public to ask questions, and do not require any justification whatsoever on the part of the officer. *Harper v. State,* 217 S.W.3d 672, 674 (Tex.App.–Amarillo 2007, no pet.). Moreover,

4

police officers do not violate the Fourth Amendment by merely approaching an individual in a public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Perez*, 85 S.W.3d at 819.

A stop is deemed an investigative detention when a police officer detains a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the *status quo* while seeking additional information. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App. 1987). In making a determination whether an encounter or detention occurred, we consider all of the circumstances surrounding the incident to determine "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *State v. Garcia-Cantu,* 253 S.W.3d 236, 242 (Tex.Crim.App. 2008). Each case must be evaluated on its own terms. "The test is necessarily imprecise, because it is designed to access the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint of liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Michigan v. Chesternut*, 486 U.S.567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). "It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure." *Garcia-Cantu,* 253 S.W.3d at 243.

5

The facts of this case are quite similar to those of *Stewart v. State*, 603 S.W.2d 861 (Tex.Crim.App. 1980). In *Stewart*, two officers observed a van parked at the end of a dead end street in front of a house under construction. 603 S.W.2d at 862. They shined their spotlights into the van and saw four persons inside. When the driver exited the van, the officers smelled the odor of burning marihuana. The officers subsequently found marihuana in a knapsack placed underneath the van by its passengers. The Court of Criminal Appeals held that "[t]he police exercised no authority until after they had smelled the odor of burning marihuana." *Id.*

Similarly, here, Officer Griffin did not engage in any show of authority until after he smelled marihuana on Appellant. Like the officers in *Stewart*, he used his spotlight to better view Appellant and the surrounding area in the dark. He first requested that Appellant come over to his patrol car and, when Appellant did not, Officer Griffin exited his car and walked over to Appellant. Appellant asked if he was doing anything wrong and Officer Griffin responded that he just wanted to speak with him. From the record, we cannot determine the tone or demeanor of the officer's statement and we must, therefore, give great deference to the trial judge's assessment as to whether the exchange was more akin to a command or a request.

After Officer Griffin smelled the marihuana on Appellant's person, he asked Appellant to place his hands behind his back and led him to the patrol car. Thus, prior to smelling the marihuana and detaining Appellant, Officer Griffin had simply illuminated Appellant and the surrounding area to more clearly see in the dark and then approached Appellant to ask him

6

some questions. Under these circumstances, we find that Officer Griffin's conduct would not communicate to a reasonable person that he or she was not free to decline Officer Griffin's requests or otherwise terminate the encounter.

That Officer Griffin activated his spotlight did not necessarily make the encounter non-consensual. *Garcia-Cantu*, 253 S.W.3d at 245 n.43. See *Hudson v. State*, 247 S.W.3d 780, 785 (Tex.App.–Amarillo 2008, no pet.). Here, the spotlight was a matter of practical necessity due to the time of night. Moreover, Appellant did not stop when the spotlight was shined in his direction but looked back and continued walking before finally stopping and facing Officer Griffin. Appellant was a pedestrian with open access to the entire yard and stopped of his own volition.

Appellant relies on *Hudson, supra*, to assert that Officer Griffin's initial interaction was to detain him. In that case, Hudson was observed by Officer Carrillo walking across a field in a residential area. 247 S.W.3d at 783. As he neared the curb, Officer Carrillo activated his patrol car emergency lights and called to him. When he was asked for identification, Hudson's eyes were glassy and he appeared nervous, shaky. After questioning Hudson about the use of controlled substances, Officer Carrillo placed him in front of his patrol car and began a pat down search when he discovered a bulge in Hudson's pocket which turned out to be a bag of marihuana. *Id.* This Court determined that, under the circumstances, Officer Carrillo's stop of Hudson was not an encounter but a detention because Hudson stopped in response to the activation of the emergency lights rather than of his own accord and there was no evidence the lights were activated for safety reasons or due to darkness.

7

247 S.W.3d at 785-86. Further, Officer Carrillo testified that he activated his overhead lights as a signal to stop and would have possibly charged the pedestrian with evasion had he fled. *Id.* Here, there is evidence Appellant continued walking after Officer Griffin activated the spotlight and requested that he come over to the patrol car. Further, Officer Griffin testified he activated the spotlight to see more clearly in the dark and Appellant was free to stop or not.[2]

Finally, based upon Marez's testimony, Appellant contends Officer Griffin commanded or ordered him to "stop" or "not to run" in conjunction with shining the spotlight. Officer Griffin, however, testified that, after he located Appellant, he did not order or command Appellant to take any action but asked him only to come over to his car or speak with him. To resolve this conflicting testimony, we defer to the trial court's express determination that Officer Griffin's testimony was "very credible." *See Garcia-Cantu*, 253 S.W.3d at 249. The trial court is the sole judge of witnesses' credibility; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), and may accept or reject any or all of the witnesses' testimony. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). *See also Garcia–Cantu,* 253 S.W.3d at 241. Appellant's sole issue is overruled.

---

[2]Neither is this case similar to *Garcia–Cantu, supra,* where the officer displayed numerous indicia of authority in connection with the use of a spotlight. Prior to turning on the spotlight, the officer blocked the suspect's exit with his patrol car. 253 S.W.3d at 249. After turning on his spotlight, the officer approached the suspect's truck "with a long flashlight playing over the driver's side, immediately saying, "What are you doing here?, us[ed] his flashlight to wave the passenger back to the rear of the truck, and, standing toe-to-toe with [the driver], shin[ed]his flashlight into [the driver's] eyes... *Id.*

**Conclusion**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Quinn, C.J., dissenting.

Publish.

9