# NOS. 12-09-00409-CR
## 12-09-00410-CR
## 12-09-00411-CR
## 12-09-00412-CR
## 12-09-00413-CR
## 12-09-00414-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *DUSTIN EDWARD KLENDWORTH,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

The State appeals the trial court's granting of a motion to suppress filed by Appellee, Dustin Edward Klendworth.   The State presents five issues. We affirm.

### BACKGROUND

Appellee was indicted for five counts of burglary of a habitation and one count of theft of property valued at $20,000.00 or more but less than $100,000.00.[1]   Appellee filed a motion to suppress in all six cases, stating that his constitutional and statutory rights had been violated as a result of a search warrant executed at his residence on October 9, 2008.   He stated that the search warrant was illegally issued because the supporting affidavit does not establish probable cause and therefore the issuance of the search warrant was not justified.   After a hearing, the trial court granted Appellee's motion to suppress and filed findings of fact and conclusions of law.   This appeal followed.

---

[1] Burglary of a habitation is a second degree felony.   *See* TEX. PENAL CODE ANN. § 30.02(c)(2) (Vernon 2003).   Theft is a third degree felony if the value of the property stolen is $20,000.00 or more but less than $100,000.00.   *See* TEX. PENAL CODE ANN. § 31.03(e)(5) (Vernon Supp. 2009).

1

**PROBABLE CAUSE**

In its third and fifth issues, the State argues that the sworn affidavit presented to the magistrate met the requirements of article 18.01(c)(3) of the Texas Code of Criminal Procedure. Further, the State contends that the affidavit established probable cause or, more specifically, a fair probability that evidence of a crime would be found in the particular place to be searched. Appellee disagrees, arguing there is no allegation that anyone had seen the property inside the place to be searched or was told the property was there.

**Facts**

On October 9, 2008, Officer Billy Jack Valentine, a Henderson County deputy sheriff, made an affidavit to obtain a search warrant for a residence. In his affidavit, he described the residence as being "in charge of and controlled by . . . [Appellee] . . . or other persons known or unknown to Affiant." According to Valentine's affidavit, a detached structure believed to be a garage, several boats, and a vehicle belonging to someone other than Appellee were located on the property with the residence. He defined "residence" as including "any structures, outbuilding, curtilage, and/or vehicles located on the premises."

Valentine stated in his affidavit that he had been dispatched to a residence in the Cherokee Shores subdivision in Mabank, Henderson County, Texas, in response to a burglar alarm. When he arrived at the residence, he noticed broken glass in a back window and dresser drawers, kitchen drawers, and cabinets that had been riffled through. A neighbor informed him that, a few minutes before Valentine arrived, he had observed a white male with brown hair, approximately five feet ten inches tall and wearing a dark colored shirt and blue jeans, running from the residence in a northerly direction.

Valentine next stated that he traveled north on the same street, searching for the suspect. At an intersection, he observed a male matching the suspect's description standing in the front yard beside the detached garage of a residence. Valentine recognized Appellee and knew Appellee had been previously convicted for burglary of a building and drug offenses. He pulled into the driveway and observed footprints "coming from the woods [and] leading to the yard" of that residence. He also noticed that Appellee's shoes and the bottom of his pants were wet. Valentine asked Appellee where he had been and Appellee stated that he had "just gotten out of bed and come out of the house." He asked Appellee why his shoes and pants were wet. Appellee responded that they got wet the day before. Valentine requested consent to take photographs of Appellee's shoes and Appellee agreed. After taking the photographs, Valentine left and returned to the previous residence to search for footprints, but was unable to locate any.

Valentine stated further that around noon that same day, he was dispatched to another

2

burglary of a habitation. While investigating that burglary, two neighbors advised him that their homes had also been burglarized. The sheriff's department also requested that he search for a missing boat reported by another resident in the same subdivision as the first burglary. Valentine located the boat, beached, approximately two hundred yards from the first reported burglary. Valentine observed that the boat had been "hot wired" and that footprints around the boat matched the general pattern of the soles of the shoes Appellee had been wearing. Valentine recovered all but two items of the stolen property where he discovered the boat. He knew that Appellee was a boat mechanic and believed he would know how to "hot wire" a boat. Also, Valentine spoke with Appellee's employer who stated that he did not show up for work that day.

Valentine stated that he believed Appellee had committed the burglaries and theft. He also stated that, based on his past experience and training, "persons involved in crimes of this nature typically keep items stolen from their crimes in their residence and/or vehicle." Based on the facts and opinions stated in the affidavit, Valentine requested issuance of a warrant authorizing a search of the residence for articles of clothing, including a pair of tennis shoes and dark (blue or black) button up work shirts, and stolen property, including a motor cover for an inboard ski boat and deep cycle marine batteries. The search warrant was issued and was executed by Valentine and David Faught, another Henderson County deputy sheriff. At the hearing on the motion to suppress, the sworn affidavit and search warrant were admitted as evidence, and Valentine and Faught testified. At the conclusion of the hearing, the trial court granted Appellee's motion to suppress.

In its findings of fact, the trial court stated as follows:

6. That the affidavit for probable cause submitted to the magistrate in this case, in which based thereon the search warrant was issued and evidence as stated was seized based solely thereon, in fact and law, was defective in that the same does not state probable cause.

7. That the affidavit for probable cause in this case, as alleging the property being located in the residence sought to be searched, is based on mere suspicion and pure conjecture of the affiant, and the affidavit does not state probable cause. That no one had seen the property inside the residence to be searched or had told the affiant that the property was inside the residence. That the only attempt in the affidavit for search warrant to establish probable cause that the items to be searched for were in the residence was the following sentence in the affidavit, being [] "Based on his past experience and training, Affiant knows that persons involved in crimes of this nature typically keep items stolen from their crimes in their residences and/or vehicle[."] The Court finds that this is insufficient both factually and legally.

. . . .

10. That before the execution of the search warrant in this case, the affiant did not know the seized property was at the place to be searched. That the affiant at such time had not been told by anyone that stolen property was at the residence to be searched. That at such time no one had been inside the residence and seen any stolen property. That at such time, no one had seen the Defendant in possession of stolen property. That the affidavit for search warrant does not allege that anyone had seen the property inside the place to be searched or knew it was there.

3

11. That the affiant's statements in the affidavit for search warrant as to the property being inside the residence to be searched are merely an expression of his belief and are in fact an unsupported assertion of the officer.

In its conclusions of law, the trial court stated that Valentine's affidavit was defective because it did "not state probable cause" and that the requirements of article 18.01(c)(3) of the Texas Code of Criminal Procedure had not been met. The trial court also concluded that all the evidence seized from inside the residence was inadmissible at the trial of the case.

**Standard of Review**

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's determination of the historical facts that the record supports and review de novo the trial court's application of the law. *Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's application of the law and probable cause. *McKissick v. State*, 209 S.W.3d 205, 211 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). However, appellate review of an affidavit in support of a search warrant is not de novo; rather, great deference is given to the magistrate's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983); *McKissick*, 209 S.W.3d at 211. Even in close cases, we give great deference to a magistrate's determination of probable cause to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement. *Rodriguez v. State*, 232 S.W.3d 55, 59-60 (Tex. Crim. App. 2007).

The test for determination of probable cause is whether the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing. *Illinois*, 462 U.S. at 216, 103 S. Ct. at 2331; McKissick, 209 S.W.3d at 211. Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986)).

To justify the issuance of a search warrant, the supporting affidavit must set forth facts sufficient to establish probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense; and (3) the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c)(Vernon Supp. 2009). Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is

4

determined by examining the totality of circumstances. ***Ramos v. State***, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996). We examine only the four corners of the affidavit to determine whether probable cause exists. ***McKissick***, 209 S.W.3d at 212. Further, the affidavit must be read in a common sense and realistic manner and reasonable inferences may be drawn from the facts and circumstances alleged. ***Ramos***, 934 S.W.2d at 363; ***Cassias***, 719 S.W.2d at 587-88.

**Analysis**

In this case, Valentine stated in his affidavit that Appellee matched the description of the suspect in the first burglary, that he was discovered in the front yard of a residence near the first burglary, that his shoes and pants were wet, that Valentine saw footprints coming from the woods to the yard of the residence, and that Appellee gave a suspicious explanation for his wet shoes and pants. Valentine also stated in his affidavit that other burglaries occurred in the same area, that a missing boat and all but two items of the stolen property were located approximately two hundred yards from the first burglary, that the boat was "hot wired," that Appellee was a boat mechanic, and that Appellee had not worked that day. Additionally, Valentine's affidavit included a statement that he believed footprints found around the boat matched the general pattern of the soles of the shoes Appellee had been wearing. These facts tend to show that Appellee may have been involved in at least the first burglary. *See* ***Ramos***, 934 S.W.2d at 363; ***Cassias***, 719 S.W.2d at 587-88.

However, the question is whether there was probable cause to believe that evidence of these crimes was probably at Appellee's alleged "residence" as that term was defined in the affidavit. Valentine stated in his affidavit that "[b]ased on his past experience and training, Affiant knows that persons involved in crimes of this nature typically keep items stolen from their crimes in their residence and/or vehicle." But the affidavit does not include any statements that Valentine or anyone else had seen the stolen property at the residence. Nor does it include any statements that Appellee was seen near the other burglaries or the recovered boat. Although Valentine noted that the recovered boat was located near the first burglary, there is nothing in the affidavit connecting the stolen property found near the boat to the residence where Valentine saw Appellee.

In ***Serrano v. State***, the search warrant was based on a confidential informant's tip that Daniel Serrano was "dealing cocaine," and an off-white powder residue found in a plastic baggie located in a garbage can outside the residence. *See* ***Serrano v. State***, 123 S.W.3d 53, 57 (Tex. App.–Austin 2003, pet. ref'd). In his affidavit, the officer stated, without any explanation of his methods or qualifications, that he conducted an analysis on the residue in the baggie "with positive results for cocaine." *Id*. at 62. The trial court found that the information the officer received from the informant was stale. *Id*. at 56. But the trial court also concluded that the defect was

cured by the cocaine residue found in the garbage can. *Id*.

In examining the affidavit on appeal, the court noted that the affiant officer relied heavily on a conclusory tip by an informant, but his affidavit did not include factual support for the reliability of the tip, such as specific dates or addresses or assertions of personal knowledge or personal observations. *Id.* at 60. Based on a police photograph, the officer identified a man leaving the residence as "Daniel Serrano," and on the same date found the cocaine residue in the garbage can. *Id*. at 62. Police files listed a "Daniel Serrano" as an offender in a family disturbance, who gave as his address the residence described in the warrant. *Id.* at 61-62. However, city customer records listed the address in the name of "Beatrice Serrano," not Daniel Serrano. *Id*.

Although the informant was said to have previously provided similar information that was reliable, the court concluded that the information he provided about Serrano amounted to a mere assertion of a crime. *See id*. at 60-62. The court further observed that there was no evidence of anyone being on the premises and seeing contraband, known users of narcotics frequenting the place, people coming or going at all hours, short stops by automobiles, or other evidence of a similar nature. *Id.* at 63. Accordingly, the court held that "[t]he tip with no nexus to the residence, the police file examination, appellant's presence on the premises, and the residue of cocaine in the plastic bag in the trash did not constitute probable cause or give the magistrate a substantial basis to so find." *Id*.

Similarly, in *State v. James*, the affidavit supporting the search warrant stated that the appellees purchased suspiciously large quantities of pseudoephedrine and other products associated with the illicit production of methamphetamine, that the appellees lived at the residence to be searched, and that the residence was located in a rural area. *See State v. James*, Nos. 03-07-00210-CR, 03-07-00211-CR, 03-07-00212-CR, 03-07-00213-CR, 2007 WL 3225374, at *4 (Tex. App.—Austin Oct. 31, 2007, no pet.) (mem. op.). The court stated that the first of these facts supported the belief that the appellees were somehow involved in methamphetamine production. *See id.* But the additional showing that they lived in a rural location did not alone support a finding of probable cause to believe that methamphetamine production was taking place at that location. *See id.* The State noted the existence of several "well known" characteristics in *James* that were commonly present in methamphetamine manufacturing cases: (1) a rural, isolated setting, (2) allegations of child abuse, (3) paranoia and individuals staying up all hours of the night, and (4) "gun wielding." *Id*., at *3. Nevertheless, the court held that in the absence of any showing that the appellees had delivered the methamphetamine ingredients they purchased to their residence or of any other facts tending to suggest that methamphetamine production was taking place at their residence, the affidavit did not provide a substantial basis for concluding that

6

methamphetamine was being produced at that location. *See id.*, at *4.

Likewise, in this case, there are no facts placing the stolen property at the residence. *See Serrano*, 123 S.W.3d at 63. Further, there is no evidence tending to suggest that the stolen property was taken to the residence. *See James*, 2007 WL 3225374, at *4. We cannot simply "infer" a connection between the stolen property found near the recovered boat and the residence. *See Cassias*, 719 S.W.2d at 590; *James*, 2007 WL 3225374, at *4. Based on his past experience and training, Valentine stated that he knew "persons involved in crimes of this nature typically keep items stolen from their crimes in their residence and/or vehicle." But this conclusion does not, by itself, provide anything more than Valentine's mere suspicion that the stolen property might be found at the residence. *See James*, 2007 WL 3225374, at *4; *Bannister v. State*, No. 07-06-0280-CR, 2008 WL 4627880, at *2-4 (Tex. App.—Amarillo Oct. 17, 2008, no pet.) (affiant officer's statement that in his experience, individuals having drug paraphernalia do not want it destroyed insufficient to show probable cause to search residence depicted in photograph allegedly showing use of such items; would require basing inference upon inference and therefore does not provide anything more than mere suspicion). Based on these facts and reviewing the totality of the circumstances, we cannot say that the affidavit in this case provides a substantial basis for concluding that the stolen property would be located at the residence. *See Illinois*, 462 U.S. at 216, 103 S. Ct. at 2331; *Ramos*, 934 S.W.2d at 363; *Cassias*, 719 S.W.2d at 588. As such, the facts in Valentine's affidavit are insufficient to establish probable cause to justify issuance of the search warrant. Therefore, the trial court did not abuse its discretion in granting Appellee's motion to suppress. Accordingly, the State's third and fifth issues are overruled.

### PLAIN VIEW DOCTRINE

In its fourth issue, the State argues that the plain view doctrine is applicable, allowing seizure of those items not described in the search warrant. Seizure of an object is lawful under the plain view exception if three requirements are met. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). First, law enforcement officials must lawfully be where the object can be "plainly viewed." *Id.* (quoting *Horton v. California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)). Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. *Id.* (quoting *Horton*, 496 U.S. at 136, 110 S. Ct. at 2308). And third, the officials must have the right to access the object. *Id.* (quoting *Horton*, 496 U.S. at 137, 110 S. Ct. at 2308). In other words, before the plain view doctrine may be relied on, it must be shown that the officer had a right to be where he was at the time of his observation. *Ebarb v. State*, 598 S.W.2d 842, 844 (Tex. Crim. App. 1979).

In its findings of fact, the trial court stated that law enforcement's only claimed legal

7

authority to search the residence was the search warrant, and that the "plain view" doctrine was not applicable in this case. Further, the trial court concluded that all of the evidence seized from inside the residence was inadmissible at trial. The officers executing the search warrant discovered a .22 caliber rifle and a savings account book and/or a check book and register at the residence in plain view that were allegedly evidence of other crimes. However, we have already determined that the facts in Valentine's affidavit are insufficient to establish probable cause to justify the issuance of the search warrant. Thus, the officers were not lawfully at the residence where the objects were discovered in plain view. *See* **Keehn**, 279 S.W.3d at 334; **Ebarb**, 598 S.W.2d at 844. Because the officers did not have a right to be in the residence where the objects were discovered in plain view, seizures of the .22 caliber rifle and savings account book and/or check book and register was unlawful. *See* **Keehn**, 279 S.W.3d at 334; **Ebarb**, 598 S.W.2d at 844. Therefore, the trial court did not err in determining that all evidence seized from inside the residence was inadmissible at trial. Accordingly, the State's fourth issue is overruled.

### INVESTIGATORY DETENTION

In its first and second issues, the State contends that Valentine had reason to detain Appellee and that there was no expectation of privacy in the soles of Appellee's shoes.

**Facts**

In Valentine's affidavit, he stated that when he arrived at a residence in response to a burglar alarm, he noticed broken glass in a back window and dresser drawers, kitchen drawers, and cabinets that had been riffled through. A neighbor informed him that, a few minutes before Valentine arrived, he had observed a white male with brown hair, approximately five feet ten inches tall and wearing a dark colored shirt and blue jeans, running from the residence in a northerly direction. Valentine traveled north on the same street, searching for the suspect. At an intersection, he observed a male matching the suspect's description standing in the front yard beside the detached garage of a residence. He pulled into the driveway and observed footprints "coming from the woods [and] leading to the yard" of the residence. He also noticed that Appellee's shoes and the bottom of his pants were wet.

At the hearing on the motion to suppress, Valentine stated that he knew Appellee had a prior felony for burglary of a building. He asked Appellee why his shoes and pants were wet, and Appellee responded that they got wet the day before. Further, Appellee stated that he had "just woke up." According to Valentine, Appellee's answers seemed "odd" and raised his suspicions. Valentine handcuffed Appellee after a "couple of minutes because [Appellee] start[ed] acting real antsy with" him. According to Valentine, it was still dark outside. While Appellee was in handcuffs, Valentine decided to take pictures of the bottom of the tennis shoes that Appellee was

8

wearing. He asked Appellee to hold up his foot and, after Appellee complied, he took pictures of the bottom of Appellee's tennis shoes. In Valentine's affidavit, he stated that he asked Appellee for consent to take the photographs and Appellee gave it. A "couple three minutes" later, Valentine uncuffed Appellee and returned to the residence of the first burglary.

In its findings of fact, the trial court stated as follows:

5. That prior to the securing of the search warrant in this case, a deputy sheriff had confronted the defendant. That without probable cause or reason to detain, the defendant was handcuffed. That [there] were no facts presented to the Court to justify either a detention or an arrest of the defendant. That at such time, the deputy sheriff made the defendant raise his foot whereupon the deputy took a picture of the bottom of the shoe the defendant was wearing. That such action by the deputy sheriff constituted an unreasonable search and seizure while the defendant was illegally detained and/or illegally arrested. That the acts of the defendant at the time was submission to authority and did not constitute consent to search or take the picture of his shoe soles.

. . . .

9. That the inclusion in the affidavit for search warrant the details of securing a picture of the soles of the Defendant's shoes, as stated in #5 above, was improper and illegal, as being "fruits of the poisonous tree" and "derivative evidence[.]" That such should not have been made a part of the affidavit for search warrant in this case and should not have been considered by the issuing magistrate.

## Applicable Law

An officer may conduct a brief investigative detention, or "***Terry*** stop," when he has a reasonable suspicion to believe that an individual is involved in criminal activity. ***Terry v. Ohio***, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); ***Balentine v. State***, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); ***Carmouche***, 10 S.W.3d at 329. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. ***Balentine***, 71 S.W.3d at 768.

Further, the officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. ***Id.*** at 771 (citing ***Rhodes v. State***, 945 S.W.2d 115, 117 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894, 118 S. Ct. 236, 139 L. Ed. 2d 167 (1997). There is no bright line test providing that mere handcuffing is always the equivalent of an arrest. ***Id.*** Instead, when evaluating whether an investigative detention is unreasonable, "common sense and ordinary human experience must govern over rigid criteria." ***Id.*** (quoting ***Rhodes***, 945 S.W.2d at 118). The nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, and the reaction of the suspect are all facts that bear on the issue. ***State v. Moore***, 25 S.W.3d 383, 386 (Tex. App.—Austin 2000, no pet.). If the force utilized exceeds the goal of the stop, the force may transform an investigative stop into

9

an arrest. *Akins v. State*, 202 S.W.3d 879, 886 (Tex. App.—Fort Worth 2006, pet. ref'd).

**Analysis**

In this case, Valentine was investigating a burglary and, based on the neighbor's description of the suspect, stopped Appellee standing in the front yard next to the detached garage of a residence. Valentine stated that Appellee matched the description of the suspect, that there were footprints "coming from the woods [and] leading to the yard" of the residence, that it was still dark outside, and that he knew Appellee had a prior felony for burglary of a building. After asking Appellee why his pants and shoes were wet and receiving "odd" answers that raised his suspicions, Valentine handcuffed Appellee because he "start[ed] acting real antsy." We must consider whether handcuffing Appellee was reasonably necessary to preserve the status quo or to promote officer safety during the investigation. *See Rhodes*, 945 S.W.2d at 117; *Moore*, 25 S.W.3d at 387.

Similar to the circumstances in *Baldwin v. State*, Valentine was alone in the dark when he encountered Appellee. *See Baldwin v. State*, 278 S.W.3d 367, 374-76 (Tex. Crim. App. 2009) (Cochran, J., concurring) (concurring justice agreed with majority that they need not decide whether the officer had reasonable suspicion to support investigative detention because handcuffing defendant was neither necessary nor reasonable under facts, but also opined that officer did not have any specific facts suggesting defendant was armed, had committed a violent crime, or was about to do so). However, Valentine articulated no reason to suspect that Appellee was carrying any type of weapon, burglary is not an inherently violent crime, and Valentine was not outnumbered. *See id.* at 375. Nor was Appellee combative, hiding his hands, reaching for his pockets, or attempting to flee. *See id.* In fact, Appellee appeared to cooperate with Valentine and answered all of his questions. The only reason that Valentine articulated for handcuffing Appellee was that Appellee "start[ed] acting real antsy." The fact that a person is acting nervous does not, alone, permit an officer to reasonably suspect that his safety may be in jeopardy or that criminal activity is afoot. *See Davis v. State*, 61 S.W.3d 94, 98 (Tex. App.—Amarillo 2001, no pet.). While we are reluctant to second guess police officers regarding such matters, there is simply no evidence that Valentine had a reason to fear for his safety or that handcuffing Appellee was necessary to maintain the status quo while Valentine investigated the first burglary. *See Moore*, 25 S.W.3d at 387. Therefore, the trial court did not err in determining that there was no probable cause or justification to either detain or arrest Appellee.

Additionally, the State argues that Appellee had no privacy in the soles of his tennis shoes and, therefore, whether he consented to the photographs of his shoes is irrelevant. Moreover, the State contends that a photograph is not a seizure. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the

record.  T<small>EX</small>. R. A<small>PP</small>. P. 38.1(i).   When an appellant does not adequately comply with rule 38.1(i), nothing is presented for appellate review.  *See State v. Gonzalez*, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993); *Nguyen v. State*, 177 S.W.3d 659, 669 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).   Here, other than the bare allegation that there is no expectation of privacy in the soles of one's shoes and that a photograph is not a seizure, the State has failed to offer any argument in support of its second issue. Because the State has failed to provide us with an adequate substantive analysis of its issue, the State has waived appellate review of this issue.

Accordingly, the State's first and second issues are overruled.

### DISPOSITION

The judgment of the trial court is *affirmed*.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 30, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

11