# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-813-CR

**Daniel Serrano, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. 3012217, HONORABLE FRANK W. BRYANT, JR., JUDGE PRESIDING

## O P I N I O N

Appellant Daniel Serrano appeals his convictions for possession of cocaine in an amount of more than four grams but less than two hundred grams with intent to deliver and for possession of methamphetamine in an amount of more than four grams and less than two hundred grams with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2003). Appellant was charged in a five-count indictment. Upon a plea bargain, the State waived and abandoned three counts. Appellant waived trial by jury and entered pleas of guilty to counts II and IV of the indictment in a bench trial. The trial court assessed punishment on each count at ten years' imprisonment, but suspended the execution of the sentences granting shock probation after 180 days

confinement in prison. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 6 (West Supp. 2003). There being a plea bargain, appellant gave notice of appeal under article 44.02 and former Rule 25.2(b)(3)(B). Tex. Code Crim. Proc. Ann. art. 44.02 (West 1979); Tex. R. App. P. 25.2(b)(3)(B) (since amended).

## Point of Error

In his sole point of error, appellant contends that the trial court erred in denying a pretrial motion to suppress evidence because the search warrant affidavit failed to establish probable cause. We agree and will reverse the judgments of convictions and remand the causes to the trial court.

## Background

Prior to trial, appellant filed a motion to suppress evidence including *inter alia* all evidence seized as the result of the execution of the search warrant at 8513 Cornwall in Austin. Appellant contended that the search warrant affidavit failed to reflect probable cause as required by the Fourth and Fourteenth Amendments to the United States Constitution and article I, section nine of the Texas Constitution, as well as certain state statutory provisions.

After pretrial hearings on July 24, and August 21, 2002,[1] the trial court overruled the suppression motion. Appellant entered his guilty pleas on October 10, 2002, and was sentenced on

---

[1] There had been an earlier hearing on the motion to suppress on June 3, 2002, but the visiting judge declined to rule because he was not going to be the trial judge.

November 4, 2002. Separate judgments of conviction were entered. The contraband which was discovered as a result of the execution of the search warrant was the evidence presented by the prosecution in support of appellant's guilty pleas to counts II and IV.

In overruling the suppression motion, the trial court found that the search warrant affidavit sufficiently reflected probable cause. The trial court found that the information received by the affiant-officer from a confidential informant was stale because the affidavit did not show when the affiant-officer received the information. However, the trial court concluded that this defect was cured by the finding of a plastic bag with cocaine residue in the garbage can at 8513 Cornwall.

The affidavit introduced at the July 24th hearing sought a search warrant for a single-story family residence at 8513 Cornwall Drive in Austin, Travis County, Texas, in control of Beatrice Serrano "Hispanic Female, Born 12/21/49," and Daniel Serrano, "Hispanic Male, Born 08/29/75," where such items as cocaine, U.S. currency, scales, photographs, and records were kept or concealed. The balance of the affidavit in pertinent part provided:

It is the belief of affiant, and he hereby charges and accuses that:

On or about April 23rd, 2001 at 8513 Cornwall Dr., Austin, Travis County, Texas, said aforedescribed persons did then and there, knowingly and intentionally possess a controlled substance, to wit: cocaine.

. . .

5) Affiant has probable cause for said belief by reason of the following facts:

Affiant is detective Scott Gunnlaugsson #2362, who is employed by the City of Austin Police Department and is currently assigned to the Narcotics Unit.

3

Affiant received information from a confidential informant that a Daniel Serrano, hispanic male, approximately 25 years old is dealing cocaine in the Austin, Travis County area. The informant also stated that Daniel Serrano has a brother, Earnest Serrano who is approximately 30 years old. Austin Police computer files show a Daniel Serrano H/M 08-29-75 listed 1070 Mearns Meadow in Report #95-4864555. Austin Police computer identification shows a Earnest Serrano H/M 01-04-68 also listed an address of 1070 Mearns Meadow. On 04-02-01 a family disturbance report was written listing Daniel Serrano as the offender. Daniel Serrano's address on this report was given as 8513 Cornwall Dr., Austin, Travis County, Texas.

Affiant found through City of Austin customer information that account # 3904219-7 for 8513 Cornwall Dr., is in the name Beatrice Serrano, who gave Texas Drivers License # 03318143. Texas Department of Public Safety drivers license records indicate that license # 03318143 is in the name of Beatrice Serrano with a birth date of 12-21-49.

On 04-23-01 your affiant conducted surveillance at 8513 Cornwall Dr., and observed Daniel Serrano leave the residence. Affiant positively identified Daniel Serrano H/M 08-29-75 as the same from Austin Police Photo 303646.

The confidential informant has provided me information in the recent past that has led to the seizer [sic] of cocaine and the arrest of individuals.

On 04/23/2001, your affiant went to 8513 Cornwall Dr., Austin, Travis County, Texas in order to retrieve the garbage from the address. Upon arrival your affiant observed the garbage can at 8513 Cornwall Dr., set out by the curb for pick up. Your affiant then retrieved the trash from the garbage can at 8513 Cornwall Dr., Austin, Travis County, Texas.

Upon inspection of the garbage retrieved from the garbage can at 8513 Cornwall Dr., Austin, Travis County, Texas, your affiant located a plastic baggie with white powder residue on the inside. Affiant also located another plastic baggie with the end tied off. Through my experience and training in narcotics this is how dealers package the cocaine for distribution. Affiant seized an advertisement in the same bag of trash addressed to the resident at 8513 Cornwall Dr., Austin, Tx.

Your affiant conducted an analysis on the plastic baggie containing the off white powder residue with positive results for cocaine.

4

## Standard of Review

We generally review a trial court's ruling on a motion to suppress evidence using a bifurcated standard of review. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (citing *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990)); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (using the first and third categories of *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)); *Robuck v. State*, 40 S.W.3d 650, 654 (Tex. App.—San Antonio 2001, pet. ref'd); *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). Under this standard, we give great deference to the trial court's determination, expressed or implied, of historical facts, if supported by the record, and generally review *de novo* the court's application of the law to the facts. *Ross*, 32 S.W.2d at 856; *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *Burke*, 27 S.W.3d at 654. Actually, the trial court's legal ruling will be upheld if it is correct on any theory of the law applicable to the case, even if the trial court gives the wrong reason therefor. *Romero*, 800 S.W.2d at 543. A reviewing court is not required to give deference to the legal ruling of the trial court and is not bound by an improper legal ruling.

The determination of the legal adequacy of an affidavit in support of a search warrant is to be made only within the four corners of the document involved. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992); *Oubre v. State*, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976); *Mayfield v. State*, 800 S.W.2d 932, 934 (Tex. App.—San Antonio 1990, no pet.). Because probable cause to support the issuance of the warrant is determined from the "four corners" of the affidavit alone, there are no credibility choices to be made by the trial court in examining the sufficiency of the affidavit to establish probable cause. *Robuck*, 40 S.W.3d at 654; *Burke*, 27 S.W.3d at 654. Thus,

5

it has been said that we review independently or *de novo* the trial court's ruling on a motion to suppress evidence where the issue is probable cause in the search warrant affidavit. *Burke*, 27 S.W.3d at 654; *Wynn v. State*, 996 S.W.2d 324, 326 (Tex. App.—Fort Worth 1999, no pet.); *Wachter v. State*, 961 S.W.2d 598, 600 (Tex. App.—San Antonio 1997, pet. ref'd).

In determining the validity of the trial court's ruling on a challenge to a search warrant affidavit, we supposedly do not determine independently or *de novo* the substantive issue before the issuing magistrate. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Lane v. State*, 971 S.W.2d 748, 752 (Tex. App.—Dallas 1998, pet. ref'd). At least the after-the-fact scrutiny of the affidavit's sufficiency should not take "the form of de novo review." *Gates*, 462 U.S. at 236. Great deference should be paid to the magistrate's determination. There is a strong preference for searches authorized by warrant, and courts should interpret affidavits in a commonsensical, rather than a hypertechnical, manner. *Id*. at 236. It is the duty of the reviewing court, however, to ensure the magistrate had a substantial basis for concluding that probable cause existed. *Id*. at 238-39. In speaking of conclusory statements and "bare-bones" affidavits, the *Gates* opinion stated: "In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id*. at 239. There are cases which caution that in light of *Gates,* appellate court review of the sufficiency of a search warrant affidavit should not be *de novo*. *See, e.g.*, *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991); *Arrick v. State*, 107 S.W.3d 710, 716 (Tex. App.—Austin 2003, pet. ref'd); *State v. Bradley*, 966

S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). We shall follow that precaution in applying the guidelines set out in *Gates. See Lane*, 971 S.W.2d at 752.[2]

**The Requirements of a Search Warrant Affidavit**

An affidavit in support of a search warrant must contain sufficient information to support the magistrate's finding of probable cause. *Hughes v. State*, 843 S.W.2d 591, 593 (Tex. Crim. App. 1992); *Keen v. State*, 626 S.W.2d 309, 312 (Tex. Crim. App. 1981); *Davis v. State*, 27 S.W.3d 664, 667 (Tex. App.—Waco 2000, pet. ref'd); *Mayfield v. State*, 800 S.W.2d 932, 934 (Tex. App.—San Antonio, 1990, no pet.). This is a requirement of the federal and state constitutions and Texas statutory law. U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. arts. 1.06, 18.01(b) (West 1977 & Supp. 2003). Thus, a search warrant properly issues only when predicated upon probable cause. Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1984)*; Davis*, 27 S.W.3d at 667*; see also Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982).

---

[2] Questions continue to arise about any inconsistency between the standard of review for a trial court's ruling on a motion to suppress and the *Illinois v. Gates*, 462 U.S. 213 (1983) standard of review concerning a magistrate's determination of probable cause in a search warrant affidavit. *See Lane v. State*, 971 S.W.2d 748, 752 n.3 (Tex. App.—Dallas 1998, pet. ref'd). *Cf. Barton v. State*, 962 S.W.2d 132, 137 (Tex. App.—Beaumont 1997, pet. ref'd); 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 6.58 (2d ed. 2001); *see also Highie v. State*, 780 S.W.2d 228, 230 (Tex. Crim. App. 1989) (reasonableness of a search or seizure is a conclusion of law reviewable as such by appellate court); *State v. Brown*, 908 S.W.2d 45, 47 (Tex. App.—Austin 1995, pet. ref'd); *Gonzales v. State*, 869 S.W.2d 588, 591 (Tex. App.—Corpus Christi 1993, no pet.).

An affidavit for a search warrant is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39; *Bawer v. State*, 769 S.W.2d 887, 902 (Tex. Crim. App. 1989), *overruled on other grounds*; *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991). A mere conclusory statement will not do. *Gates*, 462 U.S. at 239; *Trevino v. State*, 875 S.W.2d 373, 375 (Tex. App.—Corpus Christi 1994, no pet.).

The legal sufficiency of the search warrant affidavit must be judged from within its four corners, but the magistrate may make reasonable inferences from the facts presented. *Trevino*, 875 S.W.2d at 376; *Zule v. State*, 802 S.W.2d 28, 32 (Tex. App.—Corpus Christi 1990, pet. ref'd). The affidavit is to be interpreted in a commonsense, realistic manner. *Cassias*, 719 S.W.2d at 587-88; *Winkler v. State*, 634 S.W.2d 289, 293 (Tex. Crim. App 1981). A hypertechnical analysis should be avoided. *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991). As noted, the magistrate's determination of probable cause is to be given great deference by the reviewing court. *Gates*, 462 U.S. at 236; *Johnson*, 805 S.W.2d at 289. Probable cause is not controlled by proof beyond a reasonable doubt or by a preponderance of the evidence. *Gates*, 462 U.S. at 230-33; *Hennessy v. State*, 660 S.W.2d 87, 89 (Tex. Crim. App. 1983). Only a probability that contraband or evidence of the crime will be found in a particular place is required. *Davis*, 27 S.W.3d at 667.

**The Instant Affidavit:**
**a. The Tip**

We turn now to the search warrant affidavit in question. From its four corners it is observed that the affiant-officer Gunnlaugsson relied heavily upon a tip from an unidentified

8

confidential informant who had provided reliable information in the past in narcotic cases. The tip simply was that *a* Daniel Serrano, a 25-year-old Hispanic male, "is" dealing cocaine in the Austin, Travis County area and that he had a 30-year-old brother, Earnest. The tip is conclusory and "will not do." *Gates*, 462 U.S. at 239. A mere conclusory statement gives the magistrate virtually no basis at all for making a judgment regarding probable cause. *Id*. "[H]is actions cannot be a mere ratification of the bare conclusions of others." *Id*.

Reliability, veracity, and the basis of knowledge are no longer absolutely required but they are still highly relevant considerations in the totality of the circumstances analysis. *Id*. at 233. A deficiency in one may be compensated for by a strong showing of some other indicia of reliability. *Id*. The informant here was asserted to have a good track record in furnishing narcotic information, but what was the basis of his knowledge concerning the conclusory tip? The affidavit was silent as to any first-hand information by the informant. It did not include any assertions of personal knowledge or personal observations. No dates or specific addresses were given. There was no admission against penal interest by the informant which might indicate the informant had knowledge of cocaine sales, or the amounts and fees charged. There is no reasonable inference that the informant had personal knowledge of the assertion made. An informant, even one who has given correct information in the past, may acquire the information for a tip from some other person or source. Hearsay-upon-hearsay may be utilized to show probable cause if the underlying circumstances indicate a substantial basis for crediting the hearsay at each level. *Hennessy*, 660 S.W.2d at 91; *Lowery v. State*, 843 S.W.2d 136, 140 (Tex. App.—Dallas 1992, pet. ref'd). That certainly was not shown in the instant affidavit, if indeed the informant had received his information

9

from another source. In addition to its failure to show the basis of knowledge, the tip fails to mention when or where the alleged crime was being committed other than Austin, Travis County area.

Facts stated in an affidavit for a search warrant must not have become stale. *Morris v. State*, 63 S.W.3d 817, 822 (Tex. App.—Waco 2001, no pet.); *Hafford v. State*, 989 S.W.2d 439, 440 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). The instant affidavit did not reflect when the affiant-officer received the tip from the informant. It also failed to reveal when the informant obtained his information. Further, the affidavit failed to show when the incident described in the affidavit (dealing in cocaine) took place.[3] This latter failing is the most serious deficiency in the tip to prevent it from contributing to the basis for determining probable cause. *Flores v. State*, 827 S.W.2d 416, 419 (Tex. App.—Corpus Christi 1992, pet. ref'd).

Where, as here, a search warrant affidavit fails to state when the affiant received the information from the informant, when the informant obtained his information, or when the described incident took place, the affidavit is insufficient to support the issuance of a search warrant. *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983); *Peltier v. State*, 626 S.W.2d 30, 32 (Tex. Crim. App. 1981); *Heredia v. State*, 468 S.W.2d 833, 835 (Tex. Crim. App. 1971). Acts attested to in an affidavit must be closely related to the time of the issuance of the search warrant so as to justify

---

[3] The present verb tense "is dealing" was used in the tip. In view of the totality of circumstances, it has no point of reference. *See Rosencrans v. United States*, 356 F.2d 310, 316 (1st Cir. 1966), applied in *United States v. Boyd*, 422 F.2d 791 (6th Cir. 1970).

the finding of probable cause by the magistrate at the time. *Lopez v. State*, 535 S.W.2d 643, 648 (Tex. Crim. App. 1976); *Imo v. State*, 816 S.W.2d 474, 478 (Tex. App.—Texarkana 1991, pet. ref'd) (affidavit did not demonstrate when unlawful incident took place); *Dees v. State*, 722 S.W.2d 209, 215 (Tex. App.—Corpus Christi 1986, pet. ref'd) (when purchases were made was unstated in conclusory affidavit). As to staleness issues generally, *see* 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 6.62 (2d ed. 2001); 2 Wayne R. LaFave, *Search and Seizure* § 3.7(a) (3d ed. 1996).

As noted, the tip gave no time as the occurrence of the criminal activity set out in the affidavit and gave no details about the criminal activity asserted. In this same regard, no mention is made in the tip of the residence of Beatrice Serrano, which was eventually searched. There was no nexus between the tip (of criminal activity) and 8513 Cornwall. The informant made no claim that he had been on or in the premises or that he had received any information about that address. "Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." 2 Wayne R. LaFave, *Search and Seizure* § 3.7(d) (3d ed. 1996) (quoting *Commonwealth v. Kline*, 335 A.2d 361, 364 (Pa. 1978)); *see also State v. Thein*, 977 P.2d 582, 589 (Wash. 1999); *State v. Dalton*, 868 P.2d 873, 875 (Wash. App. 1994). In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556-57 n.6 (1978).

We conclude for a number of reasons that the tip here, standing alone, contributed little or nothing to the basis of finding probable cause by the issuing magistrate. We turn to the balance of the affidavit—the police investigation.

### b. Police Investigation

The affiant-officer stated that after, receiving the tip, he searched the Austin Police computer files. He found an entry involving *a* Daniel Serrano and his brother, Earnest, both with the same address—1070 Mearns Meadow. The names and ages given matched, but the date of the entry in the police files is not revealed. The affiant-officer had not been given any other physical descriptions, addresses or telephone numbers. The affidavit is silent as to whether the police files reflected any offenses involving drugs or narcotics on the part of the individuals named. The affiant-officer also found *a* Daniel Serrano with a different address. It is unclear whether this is the same Daniel Serrano. This apparent later entry in the police files shows that Daniel Serrano was listed as an offender in a family disturbance early in April 2001. He gave his address as 8513 Cornwall; that residence was listed in the City of Austin Customer Information "in the name of Beatrice Serrano with a birth date of 12-21-49." The investigation at this point added little to the basis of probable cause to search. On April 23, 2001, the day the search warrant was later issued, the affiant-officer set up a surveillance at 8513 Cornwall. The affiant-officer identified a man leaving the residence as Daniel Serrano, based on a police photograph. On the same date, the affiant-officer observed a garbage can "set out by the curb" at 8513 Cornwall. He retrieved the trash from the garbage can. Upon inspection, he found an advertisement addressed to the resident at 8513 Cornwall, a plastic

baggie with the end tied off in a manner that dealers package cocaine, and another plastic baggie with a white powder residue. The affidavit added: "Your affiant conducted an analysis on the plastic baggie containing the off-white powder residue with positive results for cocaine." The type of analysis is not explained. The term "field tested" was not used and the affiant-officer did not assert that he was a chemist or that a chemical analysis was made of the residue. Analysis by senses, sight or taste, is not mentioned.[4]

Tied-off plastic bags or baggies are a common sight in the garbage cans of today's communities. Plastic bags are sold in all shapes and sizes and used for a variety of purposes in business offices, homes, and schools. It is common knowledge that fruits, vegetables, and other items are sold and transported in tied-off plastic bags which are also used for storing items. In fact, newspapers are frequently delivered to homes in tied-off plastic bags to prevent rain or water damage. The use of tied-off plastic bags is not peculiar to cocaine dealers. The finding of an empty tied-off plastic bag or baggie in a garbage can is hardly significant in determining that contraband is probably on the premises at the time the search warrant is issued.

*California v. Greenwood*, 486 U.S. 35, 37 (1988), held that the Fourth Amendment does not prohibit a warrantless search of garbage bags left for collection on the curb outside the home. Although that issue is not invoked in this case, it is interesting to note that the *Greenwood* court observed: "It is common knowledge that plastic garbage bags left on or at the side of a public

---

[4] None of this is to suggest that a chemical test or other "proof positive" must be shown that the substance observed was in fact contraband in order to establish probable cause. *Davis v. State*, 27 S.W.3d 664, 667 (Tex. App.—Waco 2000, pet. ref'd).

13

street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id*. at 40. The court noted that "snoops" in the past had included a newspaper reporter who seized the garbage of the Secretary of State Henry Kissinger. *Id*. at 40 nn.3-4. The dissenters in *Greenwood* referred to those individuals as "unwelcome meddlers." *Id*. at 54. There can be no question that garbage cans left at the curb for collection are frequently accessible to the members of the public, including the police and neighbors with overflow or undesirable trash. And it has been said: "Half truths leading to rumor and gossip may readily flow from an attempt to 'read' the contents of another's trash." 1 Wayne R. LaFave, *Search and Seizure* § 2.6(c) (3d ed. 1996) (quoting *People v. Edwards,* 458 P.2d 713 (Cal. 1969)).

**The Tip Plus the Investigation**

The conclusory tip with no shown basis of knowledge and its temporal difficulties, plus its lack of nexus to the residence, does not in fact contribute to the finding of probable cause. The tip was a mere assertion of a crime. The affiant-officer found in the police files a name matching the one extracted from the tip. The individual is not shown to have a narcotic criminal record. Two addresses are discovered for the named individual. He is placed on the premises of the second address by surveillance and identification by police photograph. The residence is listed in the name of another person. A single incursion into the garbage can at the address reveals a plastic baggie with white powder residue shown by the affiant-officer's "analysis" to be cocaine. The garbage can at the curb was open to the public, including neighbors, the police, and "unwelcome meddlers." Standing alone, the one-time intrusion into a garbage can revealing cocaine residue in one plastic baggie along with an empty tied-off plastic baggie, would not justify a finding of

14

probable cause to search 8513 Cornwall. Other than cocaine residue in the garbage can, there is nothing to support the probability that the items to be searched for were on the premises. Here, we do not have any evidence that anyone had been on the premises and seen contraband, known users of narcotics frequenting the place, people coming or going at all hours, short stops by automobiles, or other evidence of similar nature. Although Daniel Serrano was placed on the premises in question on the day the warrant was issued, there would have been no probable cause to arrest him for possession of the cocaine residue in the trash.

The tip with no nexus to the residence, the police file examination, appellant's presence on the premises, and the residue of cocaine in the plastic bag in the trash did not constitute probable cause or give the magistrate a substantial basis to so find. If it did, then the constitutional and statutory guarantees that citizens are to be secure in their homes have little meaning.

## Conclusion

In our totality of the circumstances analysis, we have given great deference to the magistrate's decision to issue the warrant. We recognize that those requesting and issuing search warrants may not be legally trained or abreast of recent legal decisions concerning "probable cause." We have followed the guidelines of *Gates*, which makes clear it is our duty to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Gates* at 238-39. Here, we cannot so ensure from the four corners of this search warrant affidavit. Even the trial court admonished the affiant-officer about the affidavit presented to the magistrate.

The trial court erred in overruling the motion to suppress. Appellant's sole point of error is sustained.

15

The judgments of conviction are reversed and the cause is remanded to the district court.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Kidd and Onion[*]

Reversed and Remanded

Filed:   September 25, 2003

Publish

---

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).