NOS.
12-09-00409-CR

     
12-09-00410-CR

     
12-09-00411-CR

     
12-09-00412-CR

     
12-09-00413-CR

     
12-09-00414-CR

 

                         IN THE COURT OF
APPEALS         

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

THE
STATE OF TEXAS,                                 '                 APPEAL FROM THE 392ND

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

DUSTIN EDWARD KLENDWORTH,

APPELLEE                                                        '                 HENDERSON COUNTY,
TEXAS

                                                        
                                         

                                                      MEMORANDUM
OPINION

The
State appeals the trial court’s granting of a motion to suppress filed by
Appellee, Dustin Edward Klendworth.  The State presents five issues. We affirm.

 

Background

Appellee
was indicted for five counts of burglary of a habitation and one count of theft
of property valued at $20,000.00 or more but less than $100,000.00.[1]
 Appellee filed a
motion to suppress in all six cases, stating that his constitutional and
statutory rights had been violated as a result of a search warrant executed at
his residence on October 9, 2008.  He stated that the search warrant was
illegally issued because the supporting affidavit does not establish probable
cause and therefore the issuance of the search warrant was not justified.  After
a hearing, the trial court granted Appellee’s motion to suppress and filed
findings of fact and conclusions of law.  This appeal followed.

 

Probable
Cause

            In
its third and fifth issues, the State argues that the sworn affidavit presented
to the magistrate met the requirements of article 18.01(c)(3) of the Texas Code
of Criminal Procedure. Further, the State contends that the affidavit
established probable cause or, more specifically, a fair probability that
evidence of a crime would be found in the particular place to be searched.  Appellee
disagrees, arguing there is no allegation that anyone had seen the property
inside the place to be searched or was told the property was there.

Facts

On
October 9, 2008, Officer Billy Jack Valentine, a Henderson County deputy
sheriff, made an affidavit to obtain a search warrant for a residence.  In his
affidavit, he described the residence as being “in charge of and controlled by
. . . [Appellee] . . . or other persons known or unknown to Affiant.” 
According to Valentine’s affidavit, a detached structure believed to be a
garage, several boats, and a vehicle belonging to someone other than Appellee
were located on the property with the residence.  He defined “residence” as
including “any structures, outbuilding, curtilage, and/or vehicles located on
the premises.”

Valentine
stated in his affidavit that he had been dispatched to a residence in the
Cherokee Shores subdivision in Mabank, Henderson County, Texas, in response to
a burglar alarm.  When he arrived at the residence, he noticed broken glass in
a back window and dresser drawers, kitchen drawers, and cabinets that had been
riffled through.  A neighbor informed him that, a few minutes before Valentine
arrived, he had observed a white male with brown hair, approximately five feet
ten inches tall and wearing a dark colored shirt and blue jeans, running from
the residence in a northerly direction. 

Valentine
next stated that he traveled north on the same street, searching for the
suspect.  At an intersection, he observed a male matching the suspect’s description
standing in the front yard beside the detached garage of a residence.  Valentine
recognized Appellee and knew Appellee had been previously convicted for
burglary of a building and drug offenses.  He pulled into the driveway and
observed footprints “coming from the woods [and] leading to the yard” of that
residence.  He also noticed that Appellee’s shoes and the bottom of his pants
were wet.  Valentine asked Appellee where he had been and Appellee stated that
he had “just gotten out of bed and come out of the house.”  He asked Appellee
why his shoes and pants were wet.  Appellee responded that they got wet the day
before.  Valentine requested consent to take photographs of Appellee’s shoes
and Appellee agreed.  After taking the photographs, Valentine left and returned
to the previous residence to search for footprints, but was unable to locate
any.

Valentine
stated further that around noon that same day, he was dispatched to another
burglary of a habitation.  While investigating that burglary, two neighbors
advised him that their homes had also been burglarized.  The sheriff’s
department also requested that he search for a missing boat reported by another
resident in the same subdivision as the first burglary.  Valentine located the
boat, beached, approximately two hundred yards from the first reported
burglary. Valentine observed that the boat had been “hot wired” and that
footprints around the boat matched the general pattern of the soles of the
shoes Appellee had been wearing.  Valentine recovered all but two items of the
stolen property where he discovered the boat.  He knew that Appellee was a boat
mechanic and believed he would know how to “hot wire” a boat.  Also, Valentine
spoke with Appellee’s employer who stated that he did not show up for work that
day.

Valentine
stated that he believed Appellee had committed the burglaries and theft.  He
also stated that, based on his past experience and training, “persons involved
in crimes of this nature typically keep items stolen from their crimes in their
residence and/or vehicle.”  Based on the facts and opinions stated in the
affidavit, Valentine requested issuance of a warrant authorizing a search of
the residence for articles of clothing, including a pair of tennis shoes and
dark (blue or black) button up work shirts, and stolen property, including a
motor cover for an inboard ski boat and deep cycle marine batteries.  The
search warrant was issued and was executed by Valentine and David Faught,
another Henderson County deputy sheriff.  At the hearing on the motion to
suppress, the sworn affidavit and search warrant were admitted as evidence, and
Valentine and Faught testified.  At the conclusion of the hearing, the trial
court granted Appellee’s motion to suppress.

In
its findings of fact, the trial court stated as follows:

 

6.       That the affidavit for probable cause submitted to the
magistrate in this case, in which based thereon the search warrant was issued
and evidence as stated was seized based solely thereon, in fact and law, was
defective in that the same does not state probable cause.

 

7.       That the affidavit for probable cause in this case, as
alleging the property being located in the residence sought to be searched, is
based on mere suspicion and pure conjecture of the affiant, and the affidavit
does not state probable cause.  That no one had seen the property inside the
residence to be searched or had told the affiant that the property was inside
the residence.  That the only attempt in the affidavit for search warrant to
establish probable cause that the items to be searched for were in the
residence was the following sentence in the affidavit, being [] “Based on his
past experience and training, Affiant knows that persons involved in crimes of
this nature typically keep items stolen from their crimes in their residences
and/or vehicle[.”]  The Court finds that this is insufficient both factually
and legally.

 

. . . . 

 

10.    That before the execution of the search warrant in
this case, the affiant did not know the seized property was at the place to be searched.
 That the affiant at such time had not been told by anyone that stolen property
was at the residence to be searched.  That at such time no one had been inside
the residence and seen any stolen property. That at such time, no one had seen
the Defendant in possession of stolen property.  That the affidavit for search
warrant does not allege that anyone had seen the property inside the place to
be searched or knew it was there.

 

11.    That the affiant’s statements in the affidavit for
search warrant as to the property being inside the residence to be searched are
merely an expression of his belief and are in fact an unsupported assertion of
the officer.

 

     

In
its conclusions of law, the trial court stated that Valentine’s affidavit was
defective because it did “not state probable cause” and that the requirements
of article 18.01(c)(3) of the Texas Code of Criminal Procedure had not been
met.  The trial court also concluded that all the evidence seized from inside
the residence was inadmissible at the trial of the case.

Standard
of Review

In
reviewing a trial court’s ruling on a motion to suppress, we apply a bifurcated
standard of review.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total deference to a trial court’s determination of
the historical facts that the record supports and review de novo the trial
court’s application of the law.  Carmouche, 10 S.W.3d at 327; Guzman,
955 S.W.2d at 89.  We review de novo the trial court’s application of the law
and probable cause.  McKissick v. State, 209 S.W.3d 205, 211
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  However, appellate review of
an affidavit in support of a search warrant is not de novo; rather, great deference
is given to the magistrate’s determination of probable cause.  Illinois
v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527
(1983); McKissick, 209 S.W.3d at 211.  Even in close cases, we
give great deference to a magistrate’s determination of probable cause to
encourage police officers to use the warrant process rather than making a
warrantless search and later attempting to justify their actions by invoking
some exception to the warrant requirement.  Rodriguez v. State,
232 S.W.3d 55, 59-60 (Tex. Crim. App. 2007).

The
test for determination of probable cause is whether the magistrate had a
substantial basis for concluding that a search warrant would uncover evidence
of wrongdoing.  Illinois, 462 U.S. at 216, 103 S. Ct. at 2331;
McKissick, 209 S.W.3d at 211.  Probable cause to support the issuance of a
search warrant exists where the facts submitted to the magistrate are
sufficient to justify a conclusion that the object of the search is probably on
the premises to be searched at the time the warrant is issued.  Cassias
v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986)). 

To
justify the issuance of a search warrant, the supporting affidavit must set
forth facts sufficient to establish probable cause that (1) a specific offense
has been committed; (2) the specifically described property or items to be
searched for or seized constitute evidence of that offense or evidence that a
particular person committed that offense; and (3) the property or items
constituting evidence to be searched for or seized are located at or on the
particular person, place, or thing to be searched.  Tex. Code Crim. Proc. Ann. art. 18.01(c)(Vernon Supp. 2009).  Whether
the facts alleged in a probable cause affidavit sufficiently support a search
warrant is determined by examining the totality of circumstances.  Ramos
v. State, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996).  We examine
only the four corners of the affidavit to determine whether probable cause
exists.  McKissick, 209 S.W.3d at 212.  Further, the affidavit
must be read in a common sense and realistic manner and reasonable inferences
may be drawn from the facts and circumstances alleged. Ramos, 934
S.W.2d at 363; Cassias, 719 S.W.2d at 587-88.

Analysis

In
this case, Valentine stated in his affidavit that Appellee matched the
description of the suspect in the first burglary, that he was discovered in the
front yard of a residence near the first burglary, that his shoes and pants were
wet, that Valentine saw footprints coming from the woods to the yard of the
residence, and that Appellee gave a suspicious explanation for his wet shoes
and pants. Valentine also stated in his affidavit that other burglaries
occurred in the same area, that a missing boat and all but two items of the
stolen property were located approximately two hundred yards from the first
burglary, that the boat was “hot wired,” that Appellee was a boat mechanic, and
that Appellee had not worked that day. Additionally, Valentine’s affidavit
included a statement that he believed footprints found around the boat matched
the general pattern of the soles of the shoes Appellee had been wearing. These
facts tend to show that Appellee may have been involved in at least the first
burglary.  See Ramos, 934 S.W.2d at 363; Cassias,
719 S.W.2d at 587-88. 

However,
the question is whether there was probable cause to believe that evidence of
these crimes was probably at Appellee’s alleged “residence” as that term was
defined in the affidavit.  Valentine stated in his affidavit that “[b]ased on
his past experience and training, Affiant knows that persons involved in crimes
of this nature typically keep items stolen from their crimes in their residence
and/or vehicle.”  But the affidavit does not include any statements that
Valentine or anyone else had seen the stolen property at the residence.  Nor
does it include any statements that Appellee was seen near the other burglaries
or the recovered boat.  Although Valentine noted that the recovered boat was
located near the first burglary, there is nothing in the affidavit connecting
the stolen property found near the boat to the residence where Valentine saw
Appellee.          

In
Serrano v. State, the search warrant was based on a confidential
informant’s tip that Daniel Serrano was “dealing cocaine,” and an off-white
powder residue found in a plastic baggie located in a garbage can outside the
residence.  See Serrano v. State, 123 S.W.3d 53, 57 (Tex.
App.–Austin 2003, pet. ref’d).  In his affidavit, the officer stated,
without any explanation of his methods or qualifications, that he conducted an
analysis on the residue in the baggie “with positive results for cocaine.”  Id.
at 62.  The trial court found that the information the officer
received from the informant was stale.  Id. at 56.  But
the trial court also concluded that the defect was cured by the cocaine residue
found in the garbage can.  Id.

In
examining the affidavit on appeal, the court noted that the affiant officer
relied heavily on a conclusory tip by an informant, but his affidavit did not
include factual support for the reliability of the tip, such as specific dates
or addresses or assertions of personal knowledge or personal observations.  Id.
at 60.  Based on a police photograph, the officer identified a man leaving the
residence as “Daniel Serrano,” and on the same date found the cocaine residue
in the garbage can.  Id. at 62.  Police files
listed a “Daniel Serrano” as an offender in a family disturbance, who gave as
his address the residence described in the warrant.  Id. at
61-62. However, city customer records listed the address in the name of
“Beatrice Serrano,” not Daniel Serrano.  Id. 

Although
the informant was said to have previously provided similar information that was
reliable, the court concluded that the information he provided about Serrano
amounted to a mere assertion of a crime.  See id. at 60-62.  The
court further observed that there was no evidence of anyone being on the
premises and seeing contraband, known users of narcotics frequenting the place,
people coming or going at all hours, short stops by automobiles, or other
evidence of a similar nature.  Id. at 63.  Accordingly, the court
held that “[t]he tip with no nexus to the residence, the police file
examination, appellant’s presence on the premises, and the residue of cocaine
in the plastic bag in the trash did not constitute probable cause or give the
magistrate a substantial basis to so find.”  Id.  

Similarly,
in State v. James, the affidavit supporting the search warrant
stated that the appellees purchased suspiciously large quantities of
pseudoephedrine and other products associated with the illicit production of
methamphetamine, that the appellees lived at the residence to be searched, and
that the residence was located in a rural area.  See State v. James,
Nos. 03-07-00210-CR, 03-07-00211-CR, 03-07-00212-CR, 03-07-00213-CR, 2007 WL
3225374, at *4 (Tex. App.—Austin Oct. 31, 2007, no pet.) (mem. op.).  The court
stated that the first of these facts supported the belief that the appellees
were somehow involved in methamphetamine production.  See id.  But
the additional showing that they lived in a rural location did not alone
support a finding of probable cause to believe that methamphetamine production
was taking place at that location.  See id.  The State
noted the existence of several “well known” characteristics in James that
were commonly present in methamphetamine manufacturing cases: (1) a rural,
isolated setting, (2) allegations of child abuse, (3) paranoia and individuals
staying up all hours of the night, and (4) “gun wielding.”  Id.,
at *3.  Nevertheless, the court held that in the absence of any showing that
the appellees had delivered the methamphetamine ingredients they purchased to
their residence or of any other facts tending to suggest that methamphetamine
production was taking place at their residence, the affidavit did not provide a
substantial basis for concluding that methamphetamine was being produced at
that location.  See id., at *4.

Likewise,
in this case, there are no facts placing the stolen property at the residence.  See
Serrano, 123 S.W.3d at 63.  Further, there is no evidence
tending to suggest that the stolen property was taken to the residence.  See
James, 2007 WL 3225374, at *4.  We cannot simply “infer” a
connection between the stolen property found near the recovered boat and the
residence.  See Cassias, 719 S.W.2d at 590; James,
2007 WL 3225374, at *4.  Based on his past experience and training, Valentine
stated that he knew “persons involved in crimes of this nature typically keep
items stolen from their crimes in their residence and/or vehicle.”  But this
conclusion does not, by itself, provide anything more than Valentine’s mere
suspicion that the stolen property might be found at the residence.  See James,
2007 WL 3225374, at *4; Bannister v. State, No. 07-06-0280-CR,
2008 WL 4627880, at *2-4 (Tex. App.—Amarillo Oct. 17, 2008, no pet.)
(affiant officer’s statement that in his experience, individuals having drug
paraphernalia do not want it destroyed insufficient to show probable cause to
search residence depicted in photograph allegedly showing use of such items;
would require basing inference upon inference and therefore does not provide
anything more than mere suspicion).  Based on these facts and reviewing the
totality of the circumstances, we cannot say that the affidavit in this case
provides a substantial basis for concluding that the stolen property would be
located at the residence.  See Illinois, 462 U.S. at 216,
103 S. Ct. at 2331; Ramos, 934 S.W.2d at 363; Cassias,
719 S.W.2d at 588.  As such, the facts in Valentine’s affidavit are
insufficient to establish probable cause to justify issuance of the search
warrant.  Therefore, the trial court did not abuse its discretion in granting
Appellee’s motion to suppress.  Accordingly, the State’s third and fifth issues
are overruled.

 

Plain
View Doctrine

            In
its fourth issue, the State argues that the plain view doctrine is applicable,
allowing seizure of those items not described in the search warrant.  Seizure
of an object is lawful under the plain view exception if three requirements are
met.  Keehn v. State, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009).
 First, law enforcement officials must lawfully be where the object can be
“plainly viewed.”  Id. (quoting Horton v. California,
496 U.S. 128, 136, 110 S. Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)).  Second, the
“incriminating character” of the object in plain view must be “immediately
apparent” to the officials.  Id. (quoting Horton,
496 U.S. at 136, 110 S. Ct. at 2308).  And third, the officials must have the
right to access the object.  Id. (quoting Horton,
496 U.S. at 137, 110 S. Ct. at 2308).  In other words, before the plain view
doctrine may be relied on, it must be shown that the officer had a right to be
where he was at the time of his observation.   Ebarb v. State,
598 S.W.2d 842, 844 (Tex. Crim. App. 1979). 

In
its findings of fact, the trial court stated that law enforcement’s only
claimed legal authority to search the residence was the search warrant, and
that the “plain view” doctrine was not applicable in this case.  Further, the
trial court concluded that all of the evidence seized from inside the residence
was inadmissible at trial.  The officers executing the search warrant
discovered a .22 caliber rifle and a savings account book and/or a check book
and register at the residence in plain view that were allegedly evidence of
other crimes.  However, we have already determined that the facts in
Valentine’s affidavit are insufficient to establish probable cause to justify
the issuance of the search warrant.  Thus, the officers were not lawfully at
the residence where the objects were discovered in plain view.  See Keehn,
279 S.W.3d at 334; Ebarb, 598 S.W.2d at 844.  Because the
officers did not have a right to be in the residence where the objects were
discovered in plain view, seizures of the .22 caliber rifle and savings account
book and/or check book and register was unlawful.  See Keehn, 279
S.W.3d at 334; Ebarb, 598 S.W.2d at 844.  Therefore, the trial
court did not err in determining that all evidence seized from inside the
residence was inadmissible at trial.  Accordingly, the State’s fourth issue is
overruled.

 

Investigatory
Detention

            In
its first and second issues, the State contends that Valentine had reason to
detain Appellee and that there was no expectation of privacy in the soles of
Appellee’s shoes.

Facts

            In
Valentine’s affidavit, he stated that when he arrived at a residence in
response to a burglar alarm, he noticed broken glass in a back window and
dresser drawers, kitchen drawers, and cabinets that had been riffled through.  A
neighbor informed him that, a few minutes before Valentine arrived, he had
observed a white male with brown hair, approximately five feet ten inches tall
and wearing a dark colored shirt and blue jeans, running from the residence in
a northerly direction.  Valentine traveled north on the same street, searching
for the suspect.  At an intersection, he observed a male matching the suspect’s
description standing in the front yard beside the detached garage of a
residence.  He pulled into the driveway and observed footprints “coming from
the woods [and] leading to the yard” of the residence.  He also noticed that
Appellee’s shoes and the bottom of his pants were wet.

At
the hearing on the motion to suppress, Valentine stated that he knew Appellee
had a prior felony for burglary of a building.  He asked Appellee why his shoes
and pants were wet, and Appellee responded that they got wet the day before.  Further,
Appellee stated that he had “just woke up.”  According to Valentine, Appellee’s
answers seemed “odd” and raised his suspicions. Valentine handcuffed Appellee
after a “couple of minutes because [Appellee] start[ed] acting real antsy with”
him.  According to Valentine, it was still dark outside.  While Appellee was in
handcuffs, Valentine decided to take pictures of the bottom of the tennis shoes
that Appellee was wearing.  He asked Appellee to hold up his foot and, after
Appellee complied, he took pictures of the bottom of Appellee’s tennis shoes.  In
Valentine’s affidavit, he stated that he asked Appellee for consent to take the
photographs and Appellee gave it.  A “couple three minutes” later, Valentine
uncuffed Appellee and returned to the residence of the first burglary. 

In
its findings of fact, the trial court stated as follows:

 

5.       That prior to the securing of the search warrant in
this case, a deputy sheriff had confronted the defendant.  That without
probable cause or reason to detain, the defendant was handcuffed. That [there]
were no facts presented to the Court to justify either a detention or an arrest
of the defendant.  That at such time, the deputy sheriff made the defendant
raise his foot whereupon the deputy took a picture of the bottom of the shoe
the defendant was wearing.  That such action by the deputy sheriff constituted
an unreasonable search and seizure while the defendant was illegally detained
and/or illegally arrested.  That the acts of the defendant at the time was
submission to authority and did not constitute consent to search or take the
picture of his shoe soles. 

 

. . . . 

 

9.       That the inclusion in the affidavit for search warrant
the details of securing a picture of the soles of the Defendant’s shoes, as
stated in #5 above, was improper and illegal, as being “fruits of the poisonous
tree” and “derivative evidence[.”] That such should not have been made a part
of the affidavit for search warrant in this case and should not have been
considered by the issuing magistrate.

 

Applicable
Law

            An
officer may conduct a brief investigative detention, or “Terry
stop,” when he has a reasonable suspicion to believe that an individual is
involved in criminal activity.  Terry v. Ohio, 392 U.S. 1, 21, 88
S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); Balentine v. State,
71 S.W.3d 763, 768 (Tex. Crim. App. 2002); Carmouche, 10 S.W.3d at
329.  The reasonableness of a temporary detention must be examined in terms of
the totality of the circumstances and will be justified when the detaining officer
has specific articulable facts, which, taken together with rational inferences
from those facts, lead him to conclude that the person detained actually is,
has been, or soon will be engaged in criminal activity.  Balentine,
71 S.W.3d at 768. 

Further,
the officer may use such force as is reasonably necessary to effect the goal of
the stop: investigation, maintenance of the status quo, or officer safety.  Id.
at 771 (citing Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim.
App.), cert. denied, 522 U.S. 894, 118 S. Ct. 236, 139 L. Ed. 2d 167
(1997).  There is no bright line test providing that mere handcuffing is always
the equivalent of an arrest.  Id.  Instead, when evaluating
whether an investigative detention is unreasonable, “common sense and ordinary
human experience must govern over rigid criteria.”  Id. (quoting Rhodes,
945 S.W.2d at 118).  The nature of the crime under investigation, the degree of
suspicion, the location of the stop, the time of day, and the reaction of the
suspect are all facts that bear on the issue.  State v. Moore, 25
S.W.3d 383, 386 (Tex. App.—Austin 2000, no pet.).  If the force utilized
exceeds the goal of the stop, the force may transform an investigative stop
into an arrest.  Akins v. State, 202 S.W.3d 879, 886 (Tex.
App.—Fort Worth 2006, pet. ref’d).

Analysis

            In
this case, Valentine was investigating a burglary and, based on the neighbor’s
description of the suspect, stopped Appellee standing in the front yard next to
the detached garage of a residence.  Valentine stated that Appellee matched the
description of the suspect, that there were footprints “coming from the woods
[and] leading to the yard” of the residence, that it was still dark outside,
and that he knew Appellee had a prior felony for burglary of a building.  After
asking Appellee why his pants and shoes were wet and receiving “odd” answers
that raised his suspicions, Valentine handcuffed Appellee because he “start[ed]
acting real antsy.”  We must consider whether handcuffing Appellee was
reasonably necessary to preserve the status quo or to promote officer safety
during the investigation.  See Rhodes, 945 S.W.2d at 117; Moore,
25 S.W.3d at 387. 

Similar
to the circumstances in Baldwin v. State, Valentine was alone in
the dark when he encountered Appellee.  See Baldwin v. State, 278
S.W.3d 367, 374-76 (Tex. Crim. App. 2009) (Cochran, J., concurring) (concurring
justice agreed with majority that they need not decide whether the officer had
reasonable suspicion to support investigative detention because handcuffing
defendant was neither necessary nor reasonable under facts, but also opined
that officer did not have any specific facts suggesting defendant was armed,
had committed a violent crime, or was about to do so).  However, Valentine
articulated no reason to suspect that Appellee was carrying any type of weapon,
burglary is not an inherently violent crime, and Valentine was not outnumbered.
 See id. at 375.  Nor was Appellee combative,
hiding his hands, reaching for his pockets, or attempting to flee.  See id.
 In fact, Appellee appeared to cooperate with Valentine and answered all of his
questions.  The only reason that Valentine articulated for handcuffing Appellee
was that Appellee “start[ed] acting real antsy.”  The fact that a person is
acting nervous does not, alone, permit an officer to reasonably suspect that
his safety may be in jeopardy or that criminal activity is afoot.  See Davis
v. State, 61 S.W.3d 94, 98 (Tex. App.—Amarillo 2001, no pet.).  While
we are reluctant to second guess police officers regarding such matters, there
is simply no evidence that Valentine had a reason to fear for his safety or
that handcuffing Appellee was necessary to maintain the status quo while
Valentine investigated the first burglary.  See Moore, 25 S.W.3d
at 387.  Therefore, the trial court did not err in determining that there was
no probable cause or justification to either detain or arrest Appellee.

            Additionally,
the State argues that Appellee had no privacy in the soles of his tennis shoes
and, therefore, whether he consented to the photographs of his shoes is
irrelevant.  Moreover, the State contends that a photograph is not a seizure.  An
appellant’s brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.  Tex. R. App. P. 38.1(i).  When an
appellant does not adequately comply with rule 38.1(i), nothing is presented
for appellate review.  See State v. Gonzalez, 855 S.W.2d 692, 697
(Tex. Crim. App. 1993); Nguyen v. State, 177 S.W.3d 659, 669
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  Here, other than the bare
allegation that there is no expectation of privacy in the soles of one’s shoes
and that a photograph is not a seizure, the State has failed to offer any
argument in support of its second issue. Because the State has failed to
provide us with an adequate substantive analysis of its issue, the State has
waived appellate review of this issue.

            Accordingly,
the State’s first and second issues are overruled.

 

Disposition

The
judgment of the trial court is affirmed.

 

 

                                                                                                James T.
Worthen

                                                                                       
          Chief
Justice

 

 

 

Opinion delivered July 30, 2010.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1] Burglary
of a habitation is a second degree felony.  See Tex. Penal Code Ann. § 30.02(c)(2) (Vernon 2003).  Theft is a
third degree felony if the value of the property stolen is $20,000.00 or more
but less than $100,000.00.  See Tex.
Penal Code Ann. § 31.03(e)(5) (Vernon Supp. 2009).